571 P.2d 278

**STEARNS–ROGER CORPORATION, a Colorado Corporation, Appellant,**

v.

**The HARTFORD ACCIDENT AND IN-DEMNITY COMPANY, an Insurance Corporation, Appellee.**

No. 2 CA–CIV 2076.

Court of Appeals of Arizona, Division 2.

Oct. 22, 1976.

Rehearing Denied Nov. 30, 1976.

Review Granted Dec. 21, 1976.

Lewis & Roca by John P. Frank and Charles G. Case, II, Phoenix, for appellant.

Holesapple, Conner, Jones & Johnson by Philip Hawley Smith, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

A declaratory judgment action was brought by appellant Stearns-Roger Corporation, hereinafter referred to as Stearns, and Phelps-Dodge Corporation, hereinafter referred to as Phelps-Dodge, asking that an insurance policy issued by appellee Hartford Accident and Indemnity Company, hereinafter referred to as Hartford, be construed to afford coverage as to a particular accident. Motions for summary judgment were filed by the respective parties and a summary judgment in favor of appellee was entered. Stearns brings this appeal claiming it was entitled to a declaration in its favor.

In 1967, Stearns, an engineering construction firm based in Colorado, entered into a long term construction agreement with Phelps-Dodge for work to be performed at Phelps-Dodge Morenci substation. The contract contained an ARTICLE XII entitled "Indemnification and Insurance". The pertinent provisions state:

"1. To the extent of the insurance coverage described in paragraphs 6 and 8 of this Article XII, Stearns hereby assumes the entire responsibility and liability for any and all damage, loss, claims or injury of any kind or nature whatever (including death at any time resulting therefrom) to all persons and to all property, except property of the Owner resulting from, arising out of, or sustained in connection with the activities of Stearns or its sub-contractors in connection with the work, and Stearns hereby agrees to indemnify and save harmless Owner and any of its officers, agents and employees from and against any and all such damage, loss, claims or injury . . .

\* \* \* \* \* \*

3. Stearns agrees to procure and maintain, during the term of this Agreement, all insurance specified below, including insurance covering the obligations assumed by Stearns pursuant to the first paragraph hereof. . . .

4. Stearns will obtain and keep in force during the course of the work or, if Owner so desires, Owner will obtain and keep in force during the course of the work, Builder's All Risk Insurance covering all work completed and in the course of construction and all materials, supplies, and equipment at the building site, including both Stearns and Owner as their interests may appear.

\* \* \* \* \* \*

6. In addition to the coverage specified below in paragraph 8, Stearns will obtain and keep in force during the course of the work excess legal and contractual liability coverage in the amount of $10,000,000 at no additional cost to Owner, Stearns' legal liability to Owner in any way arising out of the work shall be limited to the total of said amounts of liability coverage. If Owner directs Stearns to increase such coverage, Stearns shall do so at Owner's expense.

\* \* \* \* \* \*

8. The insurance to be procured and maintained by Stearns is the following:

\* \* \* \* \* \*

(b) Comprehensive Public Liability Insurance including Operations, Protective and Contractual Liability coverages (including the obligation assumed by Stearns pursuant to the first paragraph hereof) under which the Owner shall also be named as an insured, with Bodily Injury limits not less than $500,000 each person and $1,000,000 each occurrence. . . ."

Stearns procured insurance from "Hartford.[1] Under this policy, Stearns was the "named insured". Phelps-Dodge, though not expressly named, was an additional insured because it was an "organization . . to which the Named Insured is obligated, by virtue of a written contract . . . to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities of, or facilities used by the Named Insured . . . ."

During the course of the construction two employees of Stearns were injured and filed suit against Phelps-Dodge. Although they were injured while doing Stearns' work, each contended that the negligence was that of Phelps-Dodge. These employees claimed and recovered workmen's compensation from Stearns but also pursued their tort remedy by suing Phelps-Dodge for negligence. Phelps-Dodge tendered the defense of the action to Hartford, but Hartford refused to defend claiming lack of coverage. The Hartford policy specifically makes Stearns the "named insured". It also states that the unqualified word "insured" includes "any . . . organization . . . to whom or to which the named insured is obligated, by virtue of a written contract . . . to provide insurance such as afforded by this policy, . . . ." The policy also includes the following exclusion upon which Hartford relies:

"This insurance does not apply

*    *    *    *    *    *

(C)(1) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law, or

(2) . . . to personal injury to any employee of the Named Insured arising out of and in the course of his employment by *the insured* . . . ." (Emphasis added)

After the trial court ruled that the exclusion applied and Hartford owed no duty to provide a defense or coverage for Phelps-Dodge in the personal injury litigation, the negligence cases were settled with payment coming from both Phelps-Dodge and to some extent from its liability insurance carrier, American Motors Insurance. In those settlements, Phelps-Dodge waived its right to appeal the declaratory judgment. However, Stearns' right to appeal was specifically preserved.

Hartford moved to dismiss Stearns' appeal prior to the time briefs were filed. This motion was denied. Hartford has again raised the issue in its brief contending that Stearns is not an aggrieved party and therefore cannot maintain this appeal.

■ Stearns contends that the denial of the motion to dismiss constitutes the law of the case which precludes Hartford from relitigating the issue. This assertion is incorrect. The denial of the motion to dismiss did not constitute the "law of the case". The phrase "law of the case" was extensively discussed in the case of *In Re Monaghan's Estate*, 71 Ariz. 334, 227 P.2d 227 (1951) where the court states that it is well settled that a judgment of an appellate court in a case becomes the law in that particular case and is not subject to review thereafter on a second appeal. Such is not the case here where we simply have an interlocutory order in the same appeal.

Very often it is only when briefs have been filed and the facts and theories of the parties fully expanded that this court can determine whether a motion to dismiss is well-taken. It is appellant's contention that since the only issue decided in the declaratory judgment was whether or not the Hartford policy covered Phelps-Dodge, Phelps-Dodge can still sue Stearns on the theory that it failed to provide the insurance coverage it agreed to in the written

1. Hartford also simultaneously provided Stearns with workmen's compensation coverage in a separate policy.

agreement between Phelps-Dodge and Stearns. In such an action Stearns would have two defenses. First, it could defend on the grounds that the agreement did not require it to indemnify and cover Phelps-Dodge for Phelps-Dodge's own negligence. See, *Southern Pacific Company v. Gila River Ranch, Inc.*, 105 Ariz. 107, 460 P.2d 1 (1969); *Allison Steel Manufacturing Co. v. Superior Court*, 22 Ariz.App. 76, 523 P.2d 803 (1974). The second ground would be that the policy did in fact provide coverage. Since this second defense was eliminated by the declaratory judgment in appellee's favor, we conclude that appellant is an aggrieved party.

Turning our attention to the merits of this appeal, it is Stearn's position that the word "insured" as used in the exclusion means a person who has three qualities: First, he is either the named insured or an additional insured; second, he is the employer of the injured employee; and third, he is the tortfeasor, the person claiming the benefit of the coverage. Appellant claims this position is supported by the Arizona cases of *Farmers Insurance Group v. Home Indemnity Company*, 108 Ariz. 126, 493 P.2d 909 (1972); *New York Underwriters Insurance Company v. Spiller*, 109 Ariz. 31, 504 P.2d 932 (1973) and *State Farm Mutual Automobile Insurance Company v. Transport Indemnity Company*, 109 Ariz. 56, 505 P.2d 227 (1973). We do not agree. The only one of the three cases cited which involves the employee exclusion clause is *Farmers Insurance Group v. Home Indemnity Company*, supra. Furthermore, all three cases involve automobile insurance policies and it is crystal clear that the decision in *Farmers Insurance Group v. Home Indemnity Company*, supra, was based upon the public policy of the State of Arizona as expressed in the financial responsibility laws. We do not believe however, that whether the policy is an automobile insurance policy or some other type of liability policy is determinative of the issue in this case.

The issue which appellant raises is well-litigated and the cases in other jurisdictions are in irreconcilable conflict. Annot., 48 A.L.R.3d 13, p. 87 et seq. It would serve no useful purpose to cite all the cases dealing with the subject. One line of authority supports appellant's position. The other line of authority supports appellee's which in essence is that if the parties had intended the construction urged by appellant, the addition of the two words "claiming coverage" would have made it clear. The policy defines "insured" and its plain and logical meaning is clear. Appellee claims its contention is supported by the lack of a severability clause. We note that some of the cases rely on such a clause and others do not.

The pivotal issue is whether the exclusions are clear and unambiguous. Arizona follows the principle of construction that where various jurisdictions reach different conclusions as to the meaning, intent and effect of the language of an insurance contract ambiguity is established. *Federal Insurance Company v. P. A. T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976). In view of the split of authority on this issue, Hartford's exclusion is ambiguous.

In case of ambiguity or doubt respecting the coverage or terms of an insurance contract, it will be construed against the insurer and in favor of the insured. *Home Insurance Company v. Lomax*, 17 Ariz.App. 520, 498 P.2d 594 (1972). This principle becomes applicable only when after considering all the provisions of the policy, it is not possible for the court to ascertain the meaning of the language when applied to the facts before the court. *Maryland Casualty Company v. Clements*, 15 Ariz.App. 216, 487 P.2d 437 (1971).

Appellee, in support of its position points to the indemnity agreement as showing that Phelps-Dodge and Stearns never intended to cover Phelps-Dodge for its own negligence. Assuming this to be true, the language of the policy does *not* contain such an exclusion. Appellee also contends the language of paragraph (C)(2) of the exclusion differs from the cases cited in the previously mentioned annotation since it refers to "any employee of the *named insured*

arising out of and in the course of his employment by the *insured* . . . ." (Emphasis added) whereas the usual employee exclusion clause reads " . . . any employee of the *insured* arising out of and in the course of his employment by the *insured* . . . " (Emphasis added) We do not believe this difference solves the problem nor is the clause in appellee's policy significantly different from the usual exclusionary clause. We are still left with the same puzzle. Does the exclusion apply when the injured employee was not in the employ of the additional insured at the time of his injury? We believe that when the clause extending coverage and the exclusionary clause are read in light of their purposes and the words "the insured" are read in relation to the particular clause to which it is directly related, an ambiguity arises. In this respect we find the language of the majority opinion in *Pullen v. Employers' Liability Assurance Corporation,* 230 La. 867, 89 So.2d 373 (1956) to be persuasive and in keeping with the law in Arizona:

"The omnibus clause states with unmistakable certainty that 'the unqualified word "insured" includes the named insured', but it also states with equal certainty that it *includes* the omnibus or additional insured. Thus, the word 'insured' relates not only to the named insured, but also to the omnibus insured. Indeed, it can be said to cover, comprehend, include and refer to every character of insured covered or intended to be covered by the policy, whether the named insured, the omnibus insured, the additional insured, or any other insured.

The omnibus clause, by its own term and title and its use of the word 'includes', indicates extensiveness and comprehensiveness and an evident purpose and intent to refer to any and every person entitled to protection under the policy. It draws no distinctions except as shown by the self-evident fact that the named insured and the omnibus insured are separate and distinct persons. It defines no relationship other than that the named insured and the omnibus in-

sured are both included under the coverage of the same liability policy. It describes and identifies no particular insured, because there is nothing in the word 'insured' as used in the clause that indicates, or even suggests, a specific reference to the named insured or any other insured. The omnibus clause, in the sense in which it uses the unqualified word 'insured', makes potential reference to *every* insured, and thus evidences its purpose and intent to offer protective coverage to any and every insured defined in its provisions. And that is all the omnibus clause and the unqualified word 'insured' used therein can be held to mean. Since it is illogical to suppose that it was designed to do the double duty of describing both the inclusions and exclusions of policy coverage, it is reasonable to conclude that it was intended to extend coverage only. Hence, the omnibus clause is intended to extend, and not to limit, coverage.

On the other hand, the very nature of the term and title of the exclusion clause suggests that it is intended to delimit and restrict coverage. It is necessarily exclusive instead of inclusive, restrictive rather than comprehensive. It is quite clearly designed to identify and point out such persons who are *not entitled* to the protective coverage of the policy.

While the unqualified word 'insured' used in the omnibus clause refers to every insured covered by the policy, it does not follow that the use of the same word in the exclusion clause makes the same inclusive reference to every insured." 89 So.2d at 375–376. (Emphasis in original)

The court in *Pullen,* supra, then points out that the true meaning of the word "insured" depends upon the meaning of the clause in which it is used:

" . . . Thus, in the omnibus clause the word has the comprehensive meaning of that clause in accordance with its language, purpose and design, while in the exclusion clause it bears the stamp and import of that particular clause and has a restrictive meaning. In the final analy-

sis, it is the meaning of the clause, rather than that of a single word, that requires interpretation." 89 So.2d at 376.

It continues:

"The exclusion clause must necessarily be examined and interpreted in the light of its own design and intent, as well as in view of the objects and purposes of the policy. Once coverage has been extended, as it is quite clearly the purpose of the policy to do and as has been done here, it should be withdrawn only when exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusion must necessarily be specific, and not general. It is specific, as distinguished from comprehensive, when it particularly identifies the insured or insureds intended to be excluded. The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion.

The pertinent language of the exclusion clause shown hereinabove is as follows:

"This policy does not apply:

'(c) * * * to any obligation for which the insured * * * may be held liable under any workmen's compensation law;

'(d) * * * to bodily injury to * * or death of any employee of the insured while engaged in the employment * * of the insured * * *.'

Under the foregoing provisions, an insured, who may be liable for workmen's compensation or whose employee may suffer injury or death while engaged in his employment, is excluded from coverage. The basis for exclusion is the existence of an employer-employee relationship between the insured and the injured, and the insured must be identified as the employer to be subject to exclusion. In the absence of an employer-employee re-

lationship between the insured and the injured, exclusion does not apply to the insured, and the latter remains under the protective coverage of the policy." 89 So.2d at 377.

Having found the exclusionary clause to be ambiguous, and applying the rules previously stated, we construe the policy as requiring an employer-employee relationship between the insured seeking coverage and the injured Stearns' employees. Since no such relationship existed here, the exclusion did not apply. We agree with appellant that its motion for summary judgment should have been granted.

The judgment is reversed and the case is remanded to the trial court with directions to enter a judgment declaring that Hartford provided coverage and had a duty to defend Phelps-Dodge in the negligence actions.

KRUCKER and HATHAWAY, JJ., concur.