571 P.2d 659

**STEARNS–ROGER CORPORATION, a Colorado Corporation, Appellant,**

v.

**The HARTFORD ACCIDENT AND INDEMNITY COMPANY, an Insurance Corporation, Appellee.**

**No. 12962–PR.**

Supreme Court of Arizona,
In Banc.

Oct. 19, 1977.

Rehearing Denied Nov. 15, 1977.

Lewis & Roca by John P. Frank and Charles G. Case, II, Phoenix, for appellant.

Holesapple, Conner, Jones & Johnson by Philip Hawley Smith, Tucson, for appellee.

HOLOHAN, Justice.

A declaratory judgment action was brought by appellant Stearns-Roger Corporation (Stearns) and Phelps-Dodge Corporation (Phelps-Dodge) asking that an insurance policy issued by appellee Hartford Accident and Indemnity Company (Hartford) be construed to afford coverage as to a particular accident. Motions for summary judgment were filed by both parties. The trial court granted summary judgment in favor of Hartford and denied coverage. Stearns filed an appeal from the judgment of the Superior Court. Thereafter Hartford moved in the Court of Appeals to dismiss Stearns' appeal prior to the time briefs were filed on the basis that Stearns lacked standing. This motion was denied. The Court of Appeals reversed the decision of the trial court. *Stearns-Roger Corporation v. Hartford*, 117 Ariz. 132, 571 P.2d 278 (App.). Hartford filed a petition for review which was accepted by this court. The opinion of the Court of Appeals is vacated. The judgment of the Superior Court is affirmed.

In 1967, Stearns, an engineering construction firm based in Colorado, entered into a long-term construction agreement with Phelps-Dodge for work to be performed at Phelps-Dodge's Morenci substation. Pursuant to this construction agreement Stearns agreed to procure comprehensive public liability insurance.[1] In addition, Stearns also obtained workmen's compensation coverage in a separate policy from Hartford.

Under the public liability insurance policy, Stearns was the named insured and Phelps-Dodge, though not expressly named, was an additional insured.[2] During the course of the construction two employees of

1. The relevant contract provisions state:

"1. To the extent of the insurance coverage described in paragraphs 6 and 8 of this Article XII, Stearns hereby assumes the entire responsibility and liability for any and all damage, loss, claims or injury of any kind or nature whatever (including death at any time resulting therefrom) to all persons and to all property, except property of Owner resulting from, arising out of, or sustained in connection with the activities of Stearns or its subcontractors in connection with the work, and Stearns hereby agrees to indemnify and save harmless Owner and any of its officers, agents and employees from and against any and all such damage, loss, claims or injury  .   .  ..

"3. Stearns agrees to procure and maintain, during the term of this Agreement, all insurance specified below, including insurance covering the obligations assumed by Stearns pursuant to the first paragraph hereof.  .   .   .

"4. Stearns will obtain and keep in force during the course of the work or, if Owner so desires, Owner will obtain and keep in force during the course of the work, Builder's All Risk Insurance covering all work completed and in the course of construction and all materials, supplies, and equipment at the building site, insuring both Stearns and Owner as their interests may appear.  .   .   .

"6. In addition to the coverage specified below in paragraph 8, Stearns will obtain and keep in force during the course of the work excess legal and contractual liability coverage in the amount of $10,000,000 at no additional cost to Owner, Stearns' legal liability to Owner in any way arising out of the work shall be limited to the total of said amounts of liability coverage. If Owner directs Stearns to increase such coverage, Stearns shall do so at Owner's expense.  .   .   .

"8. The insurance to be procured and maintained by Stearns is the following:  .   .   .

"(b) Comprehensive Public Liability Insurance including Operations, Protective and Contractual Liability coverages (including the obligation assumed by Stearns pursuant to the first paragraph hereof) under which the Owner shall also be named as an insured, with Bodily Injury limits not less than $500,000 each person and $1,000,000 each occurrence.  .   .   ."

2. The insurance policy provided that:

"The unqualified word 'Insured' includes:

"(b) the Named Insured;

.   .   .   .   .

"(c) *Any person, organization, trustee, estate or governmental entity to whom or to which the Named Insured is obligated, by virtue of a written contract or by the issuance or existence of a permit, to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities of, or facilities used by the Named Insured and then only for the limits of liability specified in such contract, but in no event for limits of liability in excess of the applicable limits of liability for this policy;*

.   .   .   ."

the named insured, Stearns, were injured and filed suit against Phelps-Dodge. The injury of each employee occurred while doing Stearns' work, yet each workman contended that the negligence was that of Phelps-Dodge. Phelps-Dodge then tendered the defense of the action to Hartford pursuant to the Hartford-Stearns insurance policy. Hartford refused to defend claiming lack of coverage.

The policy includes the following exclusion upon which Hartford relies:

"This insurance does not apply

.   .   .   .   .

"(c)(1) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law, or

"(2)   .  .  .   to personal injury to any employee of the Named Insured arising out of and in the course of his employment by the insured  .   .  .."

Both negligence cases were settled with payment coming from both Phelps-Dodge and to some extent from its liability insurance carrier, American Motors Insurance. In those settlements Phelps-Dodge waived its right to appeal the declaratory judgment; however Stearns' right to appeal was specifically preserved.

A threshold question presented in this appeal is whether Stearns has standing to contest the decision of the court below.

■  Stearns contends that the denial of Hartford's motion to dismiss in the Court of Appeals constitutes the law of the case which precludes Hartford from re-litigating the issue in this court. In dismissing the motion the appellate court merely issued an interlocutory order which does not constitute a judgment which establishes the "law of the case."

■  Hartford contends that Stearns lacked standing to maintain the appeal from the declaratory judgment which held that Hartford owes no duty to defend or indemnify Phelps-Dodge. Hartford claims that Stearns would not be a party "aggrieved" by the judgment.[3] Stearns answers that since the only issue decided in the declaratory judgment was coverage on the Hartford policy for Phelps-Dodge, Phelps-Dodge can still sue Stearns on the theory that it failed to provide insurance coverage as agreed in the contract between Phelps-Dodge and Stearns. If the declaratory judgment were allowed to stand Hartford would plead *res judicata* when Stearns looked to it for relief on the Phelps-Dodge claim. It has been held that if an appellant would be bound by a ruling of the trial court because of the doctrine of *res judicata* a party is sufficiently "aggrieved" to warrant the right of direct appeal. *Maloney v. Taplin,* 154 Conn. 247, 224 A.2d 731 (1966); *Nat'l Farmers Union Property and Casualty Company v. Maca,* 26 Wis.2d 399, 132 N.W.2d 517 (1965). The judgment in the court below has such a substantial effect on the rights of Stearns that we believe Stearns is a party sufficiently aggrieved to maintain this appeal.

On the merits, it is Stearns' position that the word "insured" as used in the exclusionary clause refers to a person who is an employee of the insured claiming coverage. In this case since the employees who are injured are not employees of the insured claiming coverage (Phelps-Dodge), the exclusion does not apply and Hartford is obligated to defend Phelps-Dodge. Hartford, on the other hand, argues that the word "insured" refers to the named insured (Stearns) and to the additional insured (Phelps-Dodge). Hartford argues that because employees of the named insured were injured the exclusionary clause applies and Hartford is relieved of its obligation to defend.

---

**3.** Rule 73(a) of the Arizona Rules of Civil Procedure provides:

"A judgment or order in a civil action or proceeding may be reviewed by appeal as pre-scribed in these Rules and not otherwise. The appeal may be taken by any party aggrieved by such judgment or order."

Stearns urges that the word "insured" is ambiguous because it could be construed to mean either the named insured or the additional insured. Stearns points out that where there is ambiguity respecting the coverage or terms of an insurance contract it will be construed against the insurer and in favor of the insured. *Federal Insurance Company v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976); *Prudential Insurance Company of America v. Barnes*, 285 F.2d 299 (9th Cir., 1960).

The exclusion clause in question reads in part:

"This insurance does not apply

.    .    .    .    .

"(2)   .   .   .   to personal injury to any employee of the Named Insured arising out of and in the course of his employment by the insured   .   .   .."

Stearns argues that the clause is ambiguous because the terms "Named Insured" and "insured" are both used; hence an interpretation should be employed which favors coverage.

It is one thing to construe an ambiguity, and it is quite another matter to create one. The terms of the insurance policy should be given a practical and reasonable construction which support the intent of the parties. The court should not attempt to revise the policy to increase the risk or extend liability just to accomplish a so-called good purpose. *Wyatt v. Woodmen Accident and Life Company*, 194 Neb. 614, 234 N.W.2d 217 (1975).

Giving a reasonable construction to the clause and the words used it becomes apparent that the policy excludes coverage for personal injury to any employee of the "Named Insured," Stearns, arising out of and in the course of his employment by the insured, Stearns. The language could have been improved by adding "named" before insured in the final phrase. We believe that it strains common English usage to read any other interpretation into the clause.

Stearns argues that this case is controlled by our decision in *Farmers Insurance Group v. Home Indemnity Company*, 108 Ariz. 126, 493 P.2d 909 (1972). The controversy in that case centered on the meaning of the words "the insured" in an exclusion clause. The exclusion clause in *Farmers* was applied in light of the statutory requirements of the Motor Vehicle Financial Responsibility Act. In *Farmers* this court said:

"Obviously the purpose of the exclusion is to protect the owner from the expense of double coverage where his employee is covered by workmen's compensation. But to apply the exclusion without limitation to defeat coverage of third parties frustrates the purpose of the Financial Responsibility Act." *Id.* at 129, 493 P.2d at 912.

The construction of the word "insured" in *Farmers* is not controlling because the instant case does not involve construction of contract provisions required by public policy.

From the facts shown in the record the persons injured were employees of Stearns who were injured in the course of their employment with Stearns. We have concluded that under the terms of the insurance policy issued by Hartford to Stearns, there was no coverage for the incident. The judgment of the Superior Court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.