977 P.2d 807

Warren BROWN and Della Brown, husband and wife; Warren Brown and Della Brown, as parents and natural guardians for Charlotte Brown and Annette Brown, their daughters, and Quick Ville, Inc., a foreign corporation, Plaintiffs–Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant–Appellee.

No. 1CA–CV97–0350.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 10, 1998.

Reconsideration Denied Nov. 24, 1998.

As Amended Nov. 25, 1998.

Review Denied May 25, 1999.

As Corrected Aug. 5, 1999.

Michael P. Fiflis, Phoenix, for Appellants.

Struckmeyer and Wilson by Donald R. Wilson, William, G. Caravetta, Phoenix, for Appellee.

## OPINION

LANKFORD, Judge.

¶ 1 Warren and Della Brown (the "Browns") claimed their insurer, United States Fidelity and Guaranty Company ("USF & G"), breached their homeowner's insurance contract and acted in bad faith by failing to adequately investigate and pay their fire loss claim. After a five day trial, a jury found in favor of USF & G. The issues on appeal are:

1. Did the trial court properly deny the Browns' motions to exclude certain evidence?

2. Did the trial court abuse its discretion when it allocated trial time between the parties and conditioned additional time for the Browns upon the consent of USF & G?

3. Did the trial court properly deny the Browns' motions for directed verdict, judgment notwithstanding the verdict and new trial as to USF & G's misrepresentation and arson defenses?

4. Did the trial court err when it entered partial summary judgment against the Browns as to their bad faith and punitive damage claims?

5. Did the trial court err when it failed to instruct the jury on innocent insureds?

For the reasons discussed below, we affirm.

¶ 2 Although we discuss specific facts as they relate to each issue, a brief summary follows. This case arises from the Browns' attempt to collect for a fire loss under a homeowner's insurance policy issued by USF & G.

¶ 3 A fire destroyed the Browns' residence in 1992. USF & G denied their claim. Its investigation revealed that Mr. Brown had intentionally started the fire using acetone as an accelerant. The Browns claimed that their neighbor, Charles Bland ("Bland"), had started the fire.

¶ 4 The Browns brought this action against USF & G alleging breach of contract

and bad faith. USF & G defended by claiming that the Browns had breached the contract. It asserted both that the Browns had misrepresented or concealed material facts on the insurance policy application and that Mr. Brown had intentionally set the fire.

¶5 The trial court granted USF & G's motion for summary judgment as to the bad faith claim and the case proceeded to trial on the breach of contract claim. After the jury found in favor of USF & G, the Browns timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B).

### I.

¶6 We begin with the trial court's evidentiary rulings. The Browns first complain that the trial court improperly denied their motion in limine to exclude evidence relating to polygraph tests. They also challenge the trial court's denial of their motion in limine to exclude evidence of their prior fire losses and related insurance claims. Third, they attack the trial court's exclusion of evidence that their neighbor possessed acetone at the time of the fire.

■■■ ¶7 We will affirm the trial court's rulings on the exclusion or admission of evidence absent an abuse of discretion or legal error and prejudice. *Gasiorowski v. Hose,* 182 Ariz. 376, 382, 897 P.2d 678, 684 (App. 1994). The improper admission of evidence is not reversible error if the jury would have reached the same verdict without the evidence. *Id.; Davis v. Cessna Aircraft Corp.,* 182 Ariz. 26, 35, 893 P.2d 26, 35 (App.1994).

¶8 We first address the trial court's denial of the Browns' motion in limine to exclude polygraph evidence. The court imposed a January 1996 deadline for filing motions in limine, but the Browns failed to file any. The Browns filed a motion to reconsider a prior order barring motions in limine, attaching as an exhibit a motion in limine. The proposed motion in limine sought to exclude evidence that Bland had taken and passed a polygraph test and that the Browns had not taken a polygraph test. The trial court denied the motion to reconsider, declaring the motion in limine untimely. The trial court made no other ruling on the admissibility of the polygraph evidence.

■■■ ¶9 Because the trial court did not rule on the merits of the polygraph evidence, the Browns could have objected to it when USF & G offered it during trial. Rather than objecting, however, the Browns' attorney made the tactical decision to introduce the evidence first. The failure to object waives the issue on appeal, *Maxwell v. Aetna Life Ins. Co.,* 143 Ariz. 205, 214, 693 P.2d 348, 357 (App.1984), and the Browns cannot now complain that the court improperly admitted the evidence that they offered. *See Goldthorpe v. Farmers Ins. Exchange,* 19 Ariz. App. 366, 368, 507 P.2d 978, 980 (1973) ("Having made a tactical decision, appellant will have to live with it and cannot use it as an excuse for failure to object.").

¶10 Citing *Davis v. Cessna Aircraft Corp., supra,* the Browns argue that their failure to object did not constitute a waiver. In *Davis,* the trial court ruled on the merits that certain evidence was admissible. *Id.* at 36, 893 P.2d at 36. Even though the plaintiffs first referred to the evidence, they did not waive their objection. *Id.* Rather, plaintiffs were entitled "to draw the sting from the damage already done by the trial court's erroneous ruling." *Id.* The Browns argue they too were entitled to "draw the sting."

¶11 *Davis* is distinguishable, however. While in that case the court ruled that the evidence was admissible, in this case there was no ruling on admissibility. Instead, the court had merely denied the Browns' motion in limine as untimely. By presenting testimony regarding their failure to take a polygraph test, instead of objecting if and when USF & G offered it, the Browns waived any objection.

■■ ¶12 We now turn to the Browns' challenge to the denial of their motion in limine to exclude evidence of their prior fire losses and related insurance claims. Like their motion to exclude the polygraph evidence, this motion was denied as untimely. Because the trial court did not rule on the merits, the Browns had to object when USF & G offered the evidence during trial to preserve the issue for appeal.

¶ 13   USF & G first mentioned evidence of the Browns' prior fire losses and insurance claims during its opening statement, when USF & G's counsel referred to the Browns' "long history of fire loss claims."   The Browns' counsel objected.   For the purposes of our review, we assume this objection was timely and preserved this issue for appeal.

¶ 14   The trial court overruled the objection without explanation.   Unlike the situation with the polygraph evidence but similar to the situation in *Davis*, the Browns faced an adverse ruling on the merits.   After objecting, the Browns were entitled to "draw the sting" from the admission of the evidence.   *Id.* We now consider whether admission of this evidence was reversible error.

¶ 15   The Browns argue that the evidence is inadmissible character evidence.   *See* Ariz. R. Evid. ("Rule") 404(b).[1]   Further, they contend that the prejudicial nature of the evidence outweighs its relevance.   *See* Rule 403.   USF & G counters that the evidence is admissible and relevant to "[establish] a pattern of behavior and in establishing a continuing plan or scheme to collect insurance premiums."   USF & G also says the evidence was not unduly prejudicial.

■ ¶ 16   Inadmissible   character   evidence is evidence offered to prove conduct in conformity with prior bad acts.   *See* Rule 404(b).   If offered for a permissible purpose, however, evidence of other acts may be admissible.   *Id.*

¶ 17   The prior fire loss and insurance claims evidence was as follows.   Mr. Brown filed a claim for a pick-up truck fire in Colorado in 1972.   In Kansas, Mr. Brown filed claims for a house fire in June 1977, a haystack fire in December 1977, a tractor fire in March 1978, a pellet mill fire in July 1979, a field fire in July 1983, and a farm building fire in September 1983.   Mr. Brown filed a claim for a shed fire in Arizona in October 1988.

■ ¶ 18   USF & G offered this evidence to show that the Browns misrepresented their prior fire loss history on their application.[2]   Nothing indicates that USF & G offered the evidence for any other purpose.   Thus, it was not inadmissible character evidence.

¶ 19   Relying on Rule 403,[3] the Browns also claim that this evidence unfairly prejudiced them.   They argue that it allowed USF & G to introduce false evidence of fraudulently duplicative proofs of loss for a 1988 fire claim and this claim.

■ ¶ 20   We need not review the trial court's balancing of prejudice and relevancy.   Even if we accept the Browns' claims of unfairness, the jury would have reached the same result.   The remaining evidence indicated overwhelmingly that Mr. Brown intentionally started this fire.

¶ 21   Investigators determined that the fire was started with acetone used as the accelerant.   Mr. Brown purchased four gallons of acetone prior to the fire.   Someone had turned off the propane and electricity to the house before the fire.   The day before the fire, Mr. Brown and Annette Brown removed sentimental and non-replaceable personal property from the house and placed it in a vault at the family business.   They also removed a non-operational vehicle from the attached garage and parked it in the driveway.   Less than 30 minutes before a neighbor reported the fire, Mr. Brown entered the house alone and remained inside for five to ten minutes.   The fire marshal found boxes containing clothes, books and other household items in an outbuilding untouched by the fire.   He also testified that the Browns deliberately interfered with his investigation.

---

1.   Arizona Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2.   We discuss USF & G's misrepresentation claim more fully in section III below.

3.   Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Moreover, the Browns were having financial troubles at the time, including several overdrawn bank accounts.

¶ 22  Based on this evidence, we conclude the jury would have reached the same verdict without evidence of the Browns' prior fire losses. Therefore, there is no reversible error. *See Gasiorowski*, 182 Ariz. at 382, 897 P.2d at 684; *Davis*, 182 Ariz. at 35, 893 P.2d at 35.

¶ 23  We now address the final challenged evidentiary ruling: the trial court's exclusion of evidence that the ·Browns' neighbor (Bland) possessed acetone at the time of the fire. The Browns proposed to call as a witness Prescott narcotics officer Kelly Kasun ("Kasun"), who allegedly would have testified that in his opinion Bland had been running a methamphetamine laboratory in his home prior to the fire. He would have testified further that acetone is necessary to produce methamphetamine and that he found five gallons of acetone on Bland's property fourteen months after the fire. However, under a prior ruling the trial court had excluded all evidence of Bland's alleged drug dealing, methamphetamine laboratory and arrest.

¶ 24  The Browns claimed this evidence would have established two things: (1) Bland had a motive to burn their house, and (2) Bland lied to investigators about the "small" amount of acetone on his property at the time of the fire. Concluding that Bland's possession of five gallons of acetone on his property fourteen months *after* the fire was too remote and irrelevant, the trial court excluded this evidence.

■ ¶ 25  Relevant evidence is evidence that makes any fact more or less probable. *See* Rule 401.[4] "Evidence which is not relevant is not admissible." Rule 402. Otherwise relevant evidence may be excluded if it is too remote in time from the proposition being proved. *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401.04[2][e][ii] (2d ed.1998). *Cf. Morris v. Aero Mayflower Transit Co.*, 73 Ariz. 390, 395, 242 P.2d 279, 282 (1952) (holding that remote evidence of speed five blocks from the point of impact in a traffic accident

is "entitled to no consideration"). In determining relevance and admissibility, the trial court has considerable discretion. *State v. Smith*, 136 Ariz. 273, 276, 665 P.2d 995, 998 (1983).

■ ¶ 26  We agree that evidence of acetone on Bland's property more than a year after the fire is too remote and irrelevant. It does not affect the probability of whether Mr. Brown started the fire. Moreover, the Browns presented substantial evidence of Bland's motive to start the fire, including testimony about a feud with Bland and violent acts Bland had committed. They also presented evidence that Bland had a means to start the fire: He had a key to their house and he was home prior to the fire. The Browns also could have elicited evidence about Bland's possession of acetone at the time of the fire without delving into the inadmissible evidence. Notwithstanding their knowledge that Bland had told USF & G investigators about acetone on his property at the time of the fire, the Browns failed to question USF & G's investigator about this on cross-examination.

¶ 27  The excluded evidence was too remote and irrelevant. Moreover, because the Browns presented other evidence and had an opportunity to present similar evidence during the trial, they were not harmed by the exclusion of this evidence. We find no abuse of discretion and no prejudice.

## II.

¶ 28  In addition to the evidentiary rulings, the Browns claim the trial court abused its discretion when it allocated time for trial. It divided the trial time equally between the parties unless defense counsel agreed to let the Browns use some of his allocated time. The Browns contend that the trial court abused its discretion in allowing USF & G to decide whether to grant the Browns additional time.

■ ¶ 29  Trial courts have the discretion to impose time limits on trial proceedings. *See* Ariz. R. Civ. P. 16(h) (Supp.

---

4.  Arizona's Rule 401 reads:
    "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

1997). However, any limits must be reasonable under the circumstances. *Id.*; 3 James W. Moore *et al., Moore's Federal Practice* § 16.77[4][i], at 16–193 (3d ed.1997). While courts may place reasonable limits on trial time to avoid undue delay, waste of time or needless presentation of cumulative evidence, *see Johnson v. Ashby,* 808 F.2d 676, 678 (8th Cir.1987), rigid limits are disfavored. *Flaminio v. Honda Motor Co., Ltd.,* 733 F.2d 463, 473 (7th Cir.1984). Trial time limits should be sufficiently flexible to allow adjustment during trial. *MCI Communications Corp. v. American Tel. & Tel. Co.,* 708 F.2d 1081, 1171 (7th Cir.1983).

¶ 30 On appeal, we review the imposition of time limits for abuse of discretion. *See Monotype Corp. PLC v. International Typeface Corp.,* 43 F.3d 443, 450 (9th Cir. 1994). To prevail, the Browns also must show they incurred some harm as a result of the court's time limitations. *Id.* at 451.

¶ 31 In June 1995, the court set the case for a five day trial. The trial court and the parties confirmed this five day limit at the pretrial conference. *See* Ariz. R. Civ. P. 16(c)(17) (imposition of time limits is a subject for pretrial conference). The court told counsel that if necessary a sixth day could be added or the usual trial schedule could be altered to add a half hour each day. The trial court followed a "presumption" of allocating the time equally unless USF & G agreed to cede some of its time to the Browns.

¶ 32 During the trial, the Browns' counsel apparently realized he was running out of time. He asked USF & G's counsel to surrender some of his trial time to allow the Browns' counsel to cross-examine one of USF & G's witnesses (Evans). Defense counsel initially refused, but later agreed to cede thirty minutes of his time. The court granted the Browns the additional time by extending the usual trial day by a half an hour. At the close of USF & G's case, the Browns requested five additional minutes to call a rebuttal witness, Bill Stevens. This time, the court denied the Browns' request.

¶ 33 We agree that the trial court abused its discretion. Control of the courtroom and trial proceedings lies within the discretion of the trial judge. *Hales v.*

*Pittman,* 118 Ariz. 305, 313, 576 P.2d 493, 501 (1978). The trial judge has not only the discretion to control the trial proceedings, but also the duty to do so. *City Transfer Co. v. Johnson,* 72 Ariz. 293, 296, 233 P.2d 1078, 1079 (1951). To delegate that control to a party, by allowing that party to decide whether its opponent receives additional trial time, was an abuse of discretion for two reasons. First, it is a failure to exercise discretion. Second, it surrenders control to a litigant, who is not a neutral decision maker but an interested participant. In fact, our research yielded no case in which the trial judge conditioned additional time upon the consent of another party.

¶ 34 Although the court abused its discretion, we fail to see that the Browns suffered harm as a result. The Browns do not assert that they were unable to present a sufficient case. They do not claim that the additional thirty minutes to cross-examine Evans was insufficient. They fail to specify what additional evidence they wanted to present but could not. They did not indicate that their requested rebuttal witness had something new to add. The error does not warrant reversal.

### III.

¶ 35 The Browns next challenge the sufficiency of the evidence presented for USF & G's misrepresentation and arson defenses. We address the evidence for each defense in turn.

¶ 36 The Browns moved for a directed verdict and for judgment notwithstanding the verdict on USF & G's misrepresentation defense. The trial court denied the motions. "A trial court should direct a verdict or enter judgment notwithstanding the verdict only if there has been no evidence that would justify a reasonable person returning a verdict for the opposing party." *Duncan v. St. Joseph's Hosp. & Medical Ctr.,* 183 Ariz. 349, 353, 903 P.2d 1107, 1111 (App.1995). We view the evidence in the light most favorable to sustaining the jury verdict and will affirm "if any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support

**92**

the verdict." *Styles v. Ceranski*, 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App.1996). We do not reweigh the evidence or determine the credibility of witnesses. *Godwin v. Farmers Ins. Co. of America*, 129 Ariz. 416, 419, 631 P.2d 571, 574 (App.1981).

¶ 37 The evidence supported the misrepresentation defense. An insurer "can rescind a policy if the insured makes misrepresentations and the misrepresentations are material to the risk insured." *CenTrust Mortgage Corp. v. PMI Mortgage Ins. Co.*, 166 Ariz. 50, 55, 800 P.2d 37, 42 (App.1990). The insurance contract between the Browns and USF & G stated that it was void if any insured misrepresented any material fact.

¶ 38 Gene Nolan ("Nolan"), a USF & G supervisor adjuster, testified that the Browns' application for insurance appeared to correctly list their prior loss history. The application asked for prior losses over the past five years. Based on the date of the application, the Browns were to list losses dating back to 1984, which they did. The Browns contend this testimony entitles them to a directed verdict.

¶ 39 We reject the Browns' contention because *other* evidence indicates the Browns provided inaccurate information. Another form requested prior loss information without any time restrictions, but Mr. Logan, the insurance agent who obtained the USF & G policy for the Browns, testified that he completed this form (which he characterized as an application) based on information provided by Mr. Brown, who said he had no prior losses. Nolan testified that USF & G would not have issued the policy if it had known of the Browns' fire loss history.

¶ 40 Although some evidence conflicted, a reasonable juror could infer that the Browns provided materially inaccurate information. *See R & M Oxford Const., Inc. v. Smith*, 172 Ariz. 241, 247, 836 P.2d 454, 460 (App.1992) (resolving evidentiary conflicts and drawing reasonable inferences from the evidence is within the province of the jury); *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985) (jury selects which conflicting inference or conclusion is the most reasonable). Therefore, the trial court properly denied the motion for directed

verdict and judgment notwithstanding the verdict.

¶ 41 In addition to their attack on the misrepresentation defense, the Browns argue that insufficient evidence of the arson defense entitles them to either a new trial or judgment notwithstanding the verdict. To support the arson defense, USF & G had to prove by a preponderance of the evidence that the fire was incendiary in origin and that the Browns were responsible for it. *Godwin*, 129 Ariz. at 419, 631 P.2d at 574. As in most arson cases, it satisfied this burden of proof by relying on circumstantial evidence. *Id.*

¶ 42 Representatives from the sheriff's office, the fire marshal, and the insurance company investigated the fire. All concluded that this was an arson fire accelerated by acetone. The Browns do not contest this. The evidence established that the Browns were responsible for the fire. They had a motive to start the fire: They were having financial troubles and the house was insured. They had the means to start the fire: Mr. Brown had purchased at least four gallons of acetone prior to the fire. Mr. Brown had the opportunity to start the fire: He entered the house alone less than thirty minutes before the fire and remained inside for five to ten minutes. Although some evidence conflicted, there was sufficient evidence to sustain the jury's verdict. We find no error in the denial of the Browns' motions.

**IV.**

¶ 43 The Browns also attack the trial court's entry of partial summary judgment in favor of USF & G on their bad faith and punitive damage claims. The Browns assert that they raised a material question of fact on their bad faith claim.

¶ 44 We review the entry of summary judgment de novo and apply the same standard as the trial court. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990). We view the facts in a light most favorable to the Browns, the party opposing the motion. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191, 888 P.2d 1375, 1378 (App.1994). A motion for sum-

mary judgment should be granted if the opposing party fails to show that a genuine issue of material fact exists and it appears that the movant is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56. If the facts produced have so little probative value that reasonable people could not agree with the conclusion advanced by the proponent, summary judgment is appropriate. *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶ 45 To establish bad faith, the Browns were required to present evidence that USF & G lacked a reasonable basis for denying the claim and that USF & G either knew about or recklessly disregarded that lack of a reasonable basis. *Deese v. State Farm Mutual Auto. Ins. Co.,* 172 Ariz. 504, 506–7, 838 P.2d 1265, 1267–68 (1992). To determine whether the insurer's actions were reasonable, courts should examine the insurer's investigation and its evaluation and review of the investigative results. *Id.* at 507, 838 P.2d at 1268. If the insurer conducted a reasonable investigation, it can safely and in good faith deny claims that are fairly debatable. *Noble v. National American Life Ins. Co.,* 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981).

¶ 46 The Browns assert that they presented expert testimony that USF & G had *no* basis to deny their claim. They also claim USF & G had an obligation to reopen its investigation after it learned that the county attorney declined to prosecute Mr. Brown and after it learned that Bland had a large supply of acetone on his property.

¶ 47 We reject the Browns' contention. Their expert, Dr. Tenney, testified that USF & G had a reasonable basis for denying the claim when it sent the denial letter. He stated that the letter was timely and seasonably issued. He further noted that USF & G properly denied the claim because the fire loss was intentional and incendiary in origin. Finally, Dr. Tenney testified that USF & G did not act in bad faith.

¶ 48 The Browns argue that if Dr. Tenney had known about the county attorney's decision not to prosecute Mr. Brown, he would have rendered a different opinion. However, the record indicates the opposite. Dr. Tenney learned that the county attor-

ney's decision to decline prosecuting Mr. Brown did not occur until almost a year *after* USF & G denied the Browns' claim. He stated that this subsequent information had no bearing on his previously formed opinion.

¶ 49 As for Bland's possession of acetone and his subsequent arrest, that evidence had no bearing on USF & G's denial of the Browns' claim. USF & G knew Bland had *some* acetone on his property at the time it denied the Browns' claim. Bland's arrest added no significant new information, and certainly did not undercut the basis for USF & G's denial.

¶ 50 While Dr. Tenney conceded that USF&G did not commit bad faith by initially denying the claim, he did opine that bad faith occurred when the insurer failed to reinvestigate after two events occurred: first, the prosecutor decided not to prosecute the Browns and second, the police raided the neighbor's residence and discovered acetone there. The Browns assert that an insurer commits bad faith by failing to reopen a claim even when a claim had been justifiably denied. This assertion is wholly without supporting argument or citation of authority, and accordingly we reject it. *See* Ariz. R. Civ. App. P. 13(a)(6). Moreover, the facts relied upon by Tenney do not show bad faith. The trial judge correctly decided that the evidence of nearby acetone more than a year after the fire was irrelevant. We therefore fail to see how it can support a claim that by ignoring it, USF&G committed bad faith. In addition, the decision against bringing a criminal prosecution does not mean that investigative reports relied upon by USF&G were inaccurate. The decision may reflect the difficult burden of proof beyond a reasonable doubt in criminal cases or other factors not bearing on the basic fact that the Browns intentionally set the fire. It is speculation to urge that the prosecutor's decision negated the evidence uncovered by investigation, and speculation is not enough to avoid summary judgment.

¶ 51 The Browns failed to raise a material question of fact as to USF & G's bad faith. Nothing in the record indicates that USF & G's investigation was inadequate or that USF & G lacked a reasonable basis for denying

the Browns' claim. In fact, the Browns' own expert testified that USF & G had a reasonable basis for denying their claim when it did. The trial court properly entered summary judgment on the bad faith claim. Finding that summary judgment was properly entered on the bad faith claim, we need not discuss the Browns' request for punitive damages connected with the alleged bad faith.

## V.

¶ 52    The Browns next complain about the trial court's failure to instruct the jury on innocent insureds. They argue that because the evidence implicates neither Mrs. Brown nor the Brown children in the arson, they were entitled to an "innocent insured" instruction under which they might recover for the fire loss. The Browns requested an instruction which read:

> If you should find that one or more of the plaintiffs are guilty of misconduct, whether it be arson or a fraudulent statement, and that other plaintiffs are innocent, the innocent plaintiffs can recover their shares of the damages notwithstanding the wrongdoing of others.

¶ 53    When reviewing whether a requested jury instruction should have been given, we look at the evidence in the light most favorable to the Browns as the requesting party. *Andrews v. Fry's Food Stores of Arizona,* 160 Ariz. 93, 95, 770 P.2d 397, 399 (App.1989). A trial court must give a requested instruction when: (1) the evidence supports the instruction, (2) the instruction is legally proper, and (3) it pertains to an important issue and the other instructions fail to address the gist of the requested instruction. *DeMontiney v. Desert Manor Convalescent Ctr., Inc.,* 144 Ariz. 6, 10, 695 P.2d 255, 259 (1985).

¶ 54    Because Arizona has neither expressly adopted nor rejected an innocent insured rule, this is an issue of first impression. Accordingly, we first review how other jurisdictions have addressed this issue. *See generally* Larry D. Scheafer, Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured,* 11 A.L.R.4th 1228 (Supps.1982 and 1997). Three theories dominate whether an innocent insured should

be entitled to recover under a fire insurance policy: the "old rule," the "rebuttable presumption" rule, and the modern rule. *See* Note, *The Problem of the Innocent Co-Insured Spouse: Three Theories on Recovery,* 17 Val. U.L.Rev. 849, 855–69 (1983).

¶ 55    Under the "old rule," an intentional act by one insured completely bars the innocent co-insured's recovery. *See, e.g., Kosior v. Continental Ins. Co.,* 299 Mass. 601, 13 N.E.2d 423 (1938); *Jones v. Fidelity & Guaranty Ins. Co.,* 250 S.W.2d 281 (Tex.App. 1952). Courts preclude recovery on the theory that spouses who hold joint interests in the insured property automatically have joint obligations under the insurance policy. *See Dolcy v. Rhode Island Joint Reinsurance Assoc.,* 589 A.2d 313, 314 (R.I.1991); *Vance v. Pekin Ins. Co.,* 457 N.W.2d 589, 591 (Iowa 1990). Allowing the innocent co-insured to recover indirectly benefits the wrongdoing insured and violates public policy. *Vance,* 457 N.W.2d at 591.

¶ 56    Instead of looking solely to the parties' ownership interests in the insured property, courts applying the "rebuttable presumption" rule look at the specific rights and obligations of the co-insureds under the policy. *Id.; Dolcy,* 589 A.2d at 314. If the innocent co-insured can rebut the "presumption" that he has joint obligations under the policy and show that his interests under the policy are severable from those of the wrongdoing insured, the innocent co-insured may recover. *See, e.g., Mercantile Trust Co. v. New York Underwriters Ins. Co.,* 376 F.2d 502 (7th Cir.1967); *Hosey v. Seibels Bruce Group, South Carolina Ins. Co.,* 363 S.2d 751 (Ala.1978); *Ryan v. MFA Mutual Ins. Co.,* 610 S.W.2d 428 (Tenn.App.1980).

¶ 57    The modern view applies a contract analysis and focuses on the intent of the parties based upon the insurance policy language. *See, e.g., Commercial Union Ins. Co. v. State Farm Fire & Casualty Co.,* 546 F.Supp. 543, 546 (D.Colo.1982); *Noland v. Farmers Ins. Co., Inc.,* 319 Ark. 449, 892 S.W.2d 271, 272–73 (1995) (citing additional cases); *Republic Ins. Co. v. Jernigan,* 753 P.2d 229, 231–32 (Colo.1988) (citing additional cases); *Dolcy,* 589 A.2d at 314–15 (citing additional cases). If the policy language per-

mits recovery, an innocent co-insured may collect insurance proceeds despite intentional acts of the wrongdoing co-insured.

¶ 58  The modern view is most consistent with Arizona's approach to insurance issues, which is to interpret and apply the insurance contract. *See generally Stearns–Roger Corp. v. Hartford Acc. & Indem. Co.,* 117 Ariz. 162, 571 P.2d 659 (1977); *Fireman's Fund Ins. Co. v. New Zealand Ins. Co.,* 103 Ariz. 260, 439 P.2d 1020 (1968). When interpreting insurance policies, we apply the plain and ordinary meaning to the express terms of the policy. *Travelers Indemnity Co. v. State,* 140 Ariz. 194, 197, 680 P.2d 1255, 1258 (App.1984).

¶ 59  Accordingly, we examine the language of the policy to determine whether Mrs. Brown or the Brown children are entitled to recover despite Mr. Brown's arson. The insurance policy lists Mr. Brown as the named insured. It defines "insured" as Mr. Brown and his relatives living in his household. Because "insured" includes relatives in Mr. Brown's household, the policy also covers Mrs. Brown and the Brown children. *See* 3 *Couch on Insurance 3d* § 40:9 (1997) ("A policy may be worded to include any relative of the named insured while living in the insured's household.").

¶ 60  The insurance contract contains another key provision which excludes coverage for intentional losses. The policy provides that:

> [USF & G] will not pay for loss or damage arising out of any acts committed:
>
> a.  By or at the direction of *any* *"insured;"* and
>
> b.  With the intent to cause a loss.

(Emphasis added).

¶ 61  Exclusion from coverage should be expressed clearly and unambiguously. *Noland,* 892 S.W.2d at 272. Generally, when an exclusionary clause precludes recovery to "any insured," the term is not ambiguous and clearly encompasses all persons insured under the policy. 7 *Couch on Insurance 3d* § 110:2 (1997). The use of the term "any" in the exclusion indicates that all insureds' obligations under that provision are joint. *McAllister v. Millville Mutual Ins. Co.,* 433 Pa.Super. 330, 640 A.2d 1283, 1289 (1994). Courts have consistently interpreted

the language "any insured" as expressing a contractual intent to prohibit recovery by innocent co-insureds. *McCauley Enterprises, Inc. v. New Hampshire Ins. Co.,* 716 F.Supp. 718, 721 (D.Conn.1989). Thus, if any one of the insureds commits arson, no other insureds can recover. *See id.*

¶ 62  We hold that the insurance contract unambiguously excludes coverage for damages or losses intentionally caused by *any* insured. Thus, it precludes Mrs. Brown and the Brown children from recovering under the policy. *See, e.g., Spezialetti v. Pacific Employers Ins. Co.,* 759 F.2d 1139 (3d Cir.1985); *Noland,* 319 Ark. 449, 892 S.W.2d 271 (1995); *American Family Mutual Ins. Co. v. Bowser,* 779 P.2d 1376 (Colo.App.1989); *McAllister,* 433 Pa.Super. 330, 640 A.2d 1283 (1994). *But see Hogs Unlimited v. Farm Bureau Mutual Ins. Co.,* 401 N.W.2d 381, 384–85 (Minn.1987) (holding that when the policy provided that intentional acts or misrepresentations by "the insured" voided the policy, "the insured" meant the guilty insured and allowed innocent co-insureds to recover).

¶ 63  We now turn to whether the trial court erred by failing to give the requested instruction and hold that it did not. The trial court need instruct the jury only on legal theories supported by the evidence. *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 503, 917 P.2d 222, 232 (1996). Because the insurance policy precludes recovery by "any insured," Mrs. Brown and the Brown children were not entitled to an innocent insured instruction. Therefore, the trial court did not err in failing to give the requested instruction.

¶ 64  In conclusion, we affirm the trial court's evidentiary rulings, the grant of summary judgment on the bad faith and punitive damages claims, and the refusal to give an innocent insured instruction to the jury. Additionally, we hold that the record contains sufficient evidence for the misrepresentation and arson defenses. Although we conclude that the trial court abused its discretion when it conditioned additional trial time on the opposing party's consent, the Browns have failed to show any harm resulting from the error. The judgment is affirmed.

¶ 65   Both parties have requested attorneys' fees on appeal.  USF & G is the prevailing party on appeal and is entitled to its fees pursuant to A.R.S. section 12–341.01(A). Accordingly, we award USF & G its attorneys' fees on appeal.

NOEL FIDEL, Presiding Judge, and SARAH D. GRANT, Judge, concur.