224 P.3d 215

**Jaime GAMBOA, Plaintiff/Appellant,**

v.

**Dorothy J. METZLER and Jerry Metzler, husband and wife, Defendants/Appellees.**

**No. 1 CA–CV 09–0090.**

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 2, 2010.

Hermilio Iniguez, Attorney at Law, Phoenix, Attorney for Plaintiff/Appellant.

Jones, Skelton & Hochuli, P.L.C. by James P. Curran, Nicholas D. Acedo, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

PORTLEY, Judge.

¶ 1 Jaime Gamboa ("Plaintiff") appeals from judgment entered in his favor. Specifically, he argues that the trial court abused its discretion when it held the parties to an agreed-upon witness schedule by imposing a time limitation on his cross-examination of an expert witness. For the following reasons, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This action stems from an automobile accident involving Plaintiff and Dorothy Metzler ("Defendant"). Plaintiff alleged that Defendant negligently caused the accident because she failed to yield at a stop sign. Defendant countered and alleged that the driver of the other car, and Plaintiff, his passenger, had comparative fault.

¶ 3 Plaintiff planned to call eight witnesses during trial and Defendant planned to call three.[1] Five witnesses for Plaintiff testified on Wednesday, September 10, 2009, the second day of trial. However, part of that day was not used due to problems with "the scheduling of the plaintiff's witnesses." At the conclusion of the day, the parties and the court agreed that Plaintiff's remaining three witnesses and Defendant's witness, Robert D. Anderson ("Anderson"), would testify the following day. The court specifically outlined the schedule as follows:

> The Court: All right. Just so that we're all clear, we're going to start with Dr. Lebovitz at 9:30 [a.m.]. And then Mr. Ernyei will complete the morning session. And then Officer Peterson at 1:30 [p.m.].
>
> . . .
>
> The Court: All right. So we will assume that is the schedule and that we will have no more down time.
>
> . . .
>
> The Court: Okay. And then Anderson at 2[:00 p.m.]
>
> . . .
>
> The Court: Then just Dr. Rockowitz for . . . defendant on Friday.
>
> . . .
>
> The Court: So plan tomorrow at 4:30 [p.m.], or whenever we finish, if it's earlier, to settle jury instructions.

In order to accommodate the plan, Defendant rescheduled Anderson to Thursday afternoon. Plaintiff's counsel, Hermilio Iniguez, did not object and indicated that he was in agreement with the outlined schedule.

¶ 4 The following morning, however, the parties alerted the court to a scheduling problem caused by Plaintiff's counsel:

> Mr. Curran: We also have an issue, Judge. Apparently, Mr. Ernyei can't be here this morning. . . .
>
> Mr. Iniguez: Yeah. It was my fault. Last night I was supposed to call him. I made a note to call him. When I called him this morning, he got upset, and he said he had things to do. And he said he would—he would be here at 1:30 [p.m.], so—he said

---

1. After Plaintiff rested, Defendant only called one witness.

he wanted 24–hour—a 24–hour notice. And so—

The Court: Well, that is a problem, because all we have is Dr. Lebovitz scheduled for this morning.

Mr. Iniguez: Yes, it does.

. . .

Mr. Iniguez: I can call him in rebuttal, if he is ready to proceed.

The Court: Well, I think that might be a problem, because we have experts of the defendant that are scheduled for this afternoon, and probably are—like most experts, have scheduling issues.

Mr. Curran: Well, it gets even worse, Judge, because-I'm not picking on Mr. Iniguez, but we came to an agreement on Tuesday that we-that I would move Anderson. And I'm paying for the privilege of moving him from Friday afternoon to this afternoon. And in exchange, we would get everybody done. We would get Dr. Lebovitz done, Mr. Ernyei done this morning. The officer would come in at 1:30 [p.m.]. We'd put-and then Mr. Iniguez, he would have the whole afternoon, basically, for Mr. Anderson. And then we'd finish with Dr. Rockowitz in the morning. So I have now moved Anderson to this afternoon.

. . .

The Court: Well, Mr. Iniguez, would Mr. Ernyei be here promptly at 1:30 [p.m.], and can you get him off-on and off within half an hour?

Mr. Iniguez: I can be done with him in half hour or less.

. . .

The Court: Well, Mr. Iniguez, it appears that the problems with the scheduling lie on your table, sir. Although I'm positive it's not intentional, the scheduling—the gaps in the trial are your doing. And we are trying to accommodate the problem that you have created with the schedule.

After the discussion, Mr. Ernyei was contacted and he agreed to appear at 1:00 p.m.

¶ 5 Despite the scheduling accommodations, and knowledge that the examination of Anderson would need to conclude by 4:30 p.m., Plaintiff did not rest until 2:41 p.m. Nevertheless, the parties again confirmed that the examination of Anderson would conclude that afternoon:

Mr. Curran: We are going to finish with Mr. Anderson today, though. That was the agreement.

The Court: Right. I don't think there is—

Mr. Curran: I'm already paying for the privilege of having moved him from Friday to today, so—

Mr. Iniguez: That's fine.

¶ 6 After a fifteen-minute recess, Defendant's counsel began his direct examination of Anderson at approximately 3:04 p.m., and concluded at approximately 4:00 p.m. Cross-examination began at 4:12 p.m., was interrupted by a recess from 4:29 p.m. to 4:38 p.m.,[2] and continued until approximately 5:04 p.m. During the final recess, the court informed the jury that they would be released late that evening, but "not . . . past 5:00 [p.m.]"

¶ 7 When the court stopped Plaintiff's counsel after 5:00 p.m., he objected to "limiting [his] cross-examination." He did not, however, request to resume cross-examination the following day or attempt to determine whether the witness was even available to return then.

¶ 8 The following morning, the court discussed Plaintiff's objection, and found that the scheduling problems the previous day were "solely attributable to [him] and the consequence of having to jam all the witnesses [in the] afternoon," and that Plaintiff "kn[ew] of the schedule [and] the consequence of not having enough time." The court concluded that it had "done everything to accommodate the scheduling problems that were encountered in th[e] trial."

¶ 9 The court, however, permitted Plaintiff to attempt to contact Anderson to see if he could return. Anderson could not be

**2.** During the cross-examination before the recess, there was detailed questioning on the contents of the file Anderson used to render his expert opinion. The court noted that counsel

"asked [Anderson] . . . to go through and articulate[,] if not page by page, close to it, everything in his file."

reached, and the court decided that, because "there [had been] too many delays in th[e] trial," it "was not going to keep the jury waiting any longer."

¶ 10 The jury found Plaintiff's damages to be $111,000, but found that he was sixty percent at fault for his failure to wear a seatbelt. The jury also found that the driver of the car Plaintiff was riding in was thirty percent at fault and that the Defendant was ten percent at fault.

¶ 11 Plaintiff appeals, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21 (2003) and – 2101(B) (2003).

## DISCUSSION

¶ 12 Plaintiff contends that the trial court violated his due process rights when the court denied him sufficient time to cross-examine Anderson. He argues that the court "err[ed], as a matter of law, when counsel [was] not offered a reasonable opportunity to cross examine the witness." Defendant, however, argues that, under the circumstances, Plaintiff's contention has no merit. Alternatively, Defendant argues that Plaintiff "failed to show that he was harmed as a result" of the time limitation.

¶ 13 Arizona Rule of Evidence 611(a) directs a trial court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." Rule 611(a) and Arizona Rule of Civil Procedure 16(h) explicitly permit the imposition of "reasonable time limits on [ ] trial proceedings or portions thereof." Consistent with these rules, a trial court has broad discretion over the management of a trial, and although it may place time limitations on trial proceedings, any limitations must be reasonable under the circumstances. *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 90–91, ¶ 29, 977 P.2d 807, 812–13 (App.1998). "[R]igid limits are disfavored" and "limits should be sufficiently flexible to allow adjustment during trial." *Id.* We review the trial court's imposition of time limitations for an abuse of discretion. *Id.* at 91, ¶ 30, 977 P.2d at 813.

¶ 14 Contrary to Plaintiff's contention, the time restrictions imposed by the court were not unreasonable under the circumstances. The court allotted sufficient time for the examination of Anderson, and Plaintiff agreed several times with opposing counsel and the court that Anderson's examination would conclude Thursday afternoon. He even agreed to the plan immediately before Anderson took the stand.

¶ 15 The record supports the court's conclusion that the time constraints encountered by Plaintiff were "solely attributable to [him] and the consequence of having to jam all the witnesses to [the] afternoon," and that he "kn[ew] of the schedule [and] the consequence of not having enough time." In fact, but for the failure to have witnesses available during the scheduled times, and but for Plaintiff's decision to use his time for other witnesses, counsel would have had additional time to cross-examine Anderson.

¶ 16 Even with the time constraints, however, Plaintiff was afforded approximately forty-three minutes to cross-examine Anderson. This included time beyond the 4:30 p.m. scheduled ending point. The court imposed no limitation on the scope of cross-examination, but cautioned counsel that time was of the essence and to "use [his] time however [he] deem[ed] appropriate". Additionally, although counsel objected to being stopped at 5:04 p.m., he did not request additional time or attempt, in any way, to then make arrangements to have the witness return the following day. Based upon the circumstances, the court did not abuse its broad discretion in holding Plaintiff to the agreed-upon schedule.

¶ 17 Additionally, to merit reversal, a party "must show they incurred some harm as a result of [a] court's time limitations." *Brown*, 194 Ariz. at 91, ¶ 30, 977 P.2d at 813; *see also State v. Dunlap*, 187 Ariz. 441, 450, 930 P.2d 518, 527 (App.1996) (holding that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for … the prejudice" (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)) ). Defendant argues that, in order to

demonstrate harm on appeal, Plaintiff was required to, but did not, make an offer of proof. "Given that counsel normally does not know in advance what a hostile witness will say on cross-examination, the offer-of-proof requirement for considering a claim on appeal [is] relaxed...." *State v. Towery*, 186 Ariz. 168, 179, 920 P.2d 290, 301 (1996). However, our supreme court has held that, to show prejudice in this context, "[a]t a minimum," the complaining party must make "an offer of proof stating with reasonable specificity what the evidence would have shown." *Id.*

¶ 18 Plaintiff did not make an offer of proof below. He does not argue that he was unable to present a sufficient case. Therefore, Plaintiff failed to demonstrate that he was harmed as a result of the court's time limitations.

## CONCLUSION

¶ 19 Based on the foregoing reasons, we affirm the judgment.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and DANIEL A. BARKER, Judge.