NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

In re the Matter of:

DANA NICOLE PROUTY, *Petitioner/Appellant*,

*v.*

BRADLEY HUGHES, *Respondent/Appellee.*

_____

In re the Matter of:

DANA NICOLE PROUTY, *Petitioner/Appellant*,

*v.*

ADAM TIMOTHY KAFKA, *Respondent/Appellee.*

Nos. 1 CA-CV 16-0397 FC
1 CA-CV 16-0402 FC
(Consolidated)
FILED 12-11-2018

_____

Appeal from the Superior Court in Maricopa County
Nos. FC2012-053300
FC2012-094898
The Honorable Jay M. Polk, Judge

**AFFIRMED**

_____

COUNSEL

The Nathanson Law Firm, Scottsdale
By Philip J. Nathanson
*Counsel for Petitioner/Appellant*

Bishop Law Office P.C., Tempe
By Daniel P. Beeks
*Counsel for Respondents/Appellees*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maurice Portley[1] joined.

---

**C R U Z**, Judge:

**¶1** Dana Nicole Prouty ("Mother") appeals from orders awarding sole legal decision-making authority and physical custody of two of her children to their respective fathers, Bradley W. Hughes ("Hughes") and Adam Timothy Kafka ("Kafka"). Mother also appeals the child support order entered in favor of Hughes and the award of attorneys' fees to both fathers. Because our resolution of only one issue from Mother's appeal merits publication, we have addressed that argument in a separate published opinion issued simultaneously with this memorandum decision. *See* Ariz. R. Sup. Ct. 111(h). For the reasons stated below, and for reasons addressed in the opinion, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2** Mother has three children; only the two oldest are involved in this appeal. Mother and Kafka are the parents of M.P. ("Daughter"), born in 2008. Two years later, Mother and Kafka entered into a custody agreement in Illinois, where Mother lived, which awarded her sole legal decision-making authority and primary physical custody of Daughter, and

---

[1] The Honorable Maurice Portley, Retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

provided Kafka with unspecified parenting time, given that he lived in Nebraska.

¶3            In October 2010, Mother and Daughter moved to Arizona after Mother became involved with Hughes.  Mother and Hughes had a son, M.H. ("Son"), in 2011.

¶4            In September 2012, Mother filed a petition to establish paternity and custody of Son.  A month later, Mother filed a request to relocate to Illinois, which Hughes opposed.  In December 2012, Hughes obtained another order of protection that included Son, alleging Mother threatened to kill herself and her children.

¶5            During that month, Kafka filed the Illinois custody order in Arizona with a petition to modify that order, along with a motion for temporary orders without notice for custody of Daughter.  In support of his motion, Kafka cited Mother's threats to harm herself and Daughter. Pursuant to the parties' agreement, the superior court granted temporary physical custody of both children to Hughes, with Mother having supervised parenting time and Kafka having parenting time with Daughter in Arizona once a month and quashed the order of protection.  Mother subsequently became pregnant with her third child, who is not a party to this appeal.

¶6            In May 2013, Kafka petitioned to modify the temporary orders and establish a parenting time schedule with Daughter.  In July 2013, the superior court, on its own motion, ordered Kafka to register the Illinois custody order in Arizona.  Shortly thereafter, Mother took the children to Illinois without notice or permission.  The court ordered Mother to return with the children to Arizona after she gave birth to her third child, but no later than September 30, 2013.  The court awarded temporary physical custody of Daughter and Son to Hughes and joint legal decision-making authority to Mother for both children.  Mother did not return to Arizona with the children as ordered, alleging her third child was born with medical complications requiring them to remain in Illinois.  Hughes took physical custody of Son in Illinois around this time, but Daughter remained in Illinois with Mother.

¶7            In November 2013, the superior court issued a warrant for Kafka to take temporary physical custody of Daughter.  Kafka filed a contempt petition in March 2014 after Mother had not complied with the order to place Daughter with Kafka.  The court then ordered Mother to appear in Arizona on July 1, 2014, with Daughter and show good cause for

Mother's failure to comply with its November 2013 order. When she failed to appear the court again ordered Mother to bring Daughter to Arizona for an October 1, 2014 evidentiary hearing. Mother failed to appear again, and the court awarded Kafka temporary sole legal decision-making authority. Kafka obtained physical custody of Daughter on January 5, 2015.

¶8　　　　Following a two and a half-day trial in January 2016, the superior court awarded Kafka sole legal decision-making authority as to Daughter and awarded Hughes sole legal decision-making authority as to Son. Mother was ordered to undergo counseling prior to exercising supervised parenting time with both children. The court calculated Mother's child support obligation based on attributed income of $32.00 per hour and awarded attorneys' fees to Kafka and Hughes.

¶9　　　　Mother filed timely notices of appeal from the final orders in both cases. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).[2]

## DISCUSSION

I.　　Trial Time Limitations

¶10　　　　Mother argues the superior court violated her due process rights by imposing time limitations that precluded her from effectively cross-examining Hughes and Kafka. Specifically, Mother contends that the time limitations were unreasonable because she was given less time to present her case than Hughes and Kafka combined, and because she ran out of time to cross-examine the fathers. Further, Mother asserts that the court treated her unfairly when it added two hours on a third day but did not allocate any of that time to Mother. Hughes and Kafka counter that the allocation of trial time was reasonable under the circumstances and, in any event, Mother failed to show any prejudice.

¶11　　　　A superior court has broad discretion to impose time limitations on trial proceedings. *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014); *see also* Ariz. R. Fam. Law P. ("Rule") 77(B)(1). Any such limitations must be reasonable under the circumstances. *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 13 (App. 2010). We therefore review a superior court's imposition of time limitations for an abuse of discretion. *Id.*

---

[2]　　　　This court consolidated the appeals at Mother's request.

¶12        The record reflects that significant time was spent on the first day of trial addressing pretrial matters and trial management issues. Mother used a fair amount of this time rearguing temporary orders and other prior court orders. The superior court repeatedly cautioned Mother that she was spending time on issues that had been previously decided and this was her time to present evidence relevant to permanent custody orders. Mother had used two hours of her allotted time before she began to present her case. As a result, the court shortened the trial time allotted to all parties.

¶13        Mother later used additional time when she was late returning from a break. The superior court offered to accommodate Mother, noting the delays were all attributable to her, including her failure to submit exhibits on time.

¶14        Although Mother's time management shortened her presentation at trial, Mother examined Hughes and Kafka, and cross-examined a parenting time supervisor. Mother also presented evidence calling into question the allegations in Hughes' petition for an order of protection. She offered favorable mental health evaluations and reports from parenting time supervisors, and also disputed Kafka's allegations of parental alienation. The record supports the superior court's finding that Mother made inefficient use of time and failed to timely file her exhibits and pretrial statements. *See Volk*, 235 Ariz. at 469, ¶ 22 (in applying time limitations, court need not "indulge inefficient use of time by parties or their counsel").

¶15        Moreover, to merit reversal on these grounds, Mother must show prejudice—that she "incurred some harm as a result of [a] court's time limitations." *Gamboa*, 223 Ariz. at 402, ¶ 17 (citation and quotation omitted); *see also Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 91, ¶ 30 (App. 1998) (holding that a party asserting that the superior court denied her right to due process must show how the lack of additional time harmed her case). Mother, however, has made no showing of prejudice, as she does not identify what additional evidence she would have offered or witnesses she would have called, and she does not explain how the absence of that evidence prejudiced her. *See Gamboa*, 223 Ariz. at 402-03, ¶ 17 (rejecting appellant's argument that time limitations harmed him because he did not make an offer of proof stating with reasonable specificity what additional evidence would have shown). Mother's inability to manage her trial time in an efficient manner does not constitute a denial of due process. *See Volk*, 235 Ariz. at 469, ¶ 22. On this record, we conclude Mother had a meaningful opportunity to be heard.

II.     Admission of Dr. Moran's Report

**¶16**        Mother argues that the superior court abused its discretion when it considered a custody evaluation by John Moran, Ph.D., because he did not personally observe the children before creating his report.  Mother also argues the court violated her rights to due process, as the report lacked foundation because no party called Dr. Moran to testify.[3]  We will not disturb a superior court's ruling on the admissibility of evidence absent a clear abuse of discretion and resulting prejudice.  *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 24 (App. 2004) (citation omitted).

**¶17**        The superior court appointed Dr. Moran to perform a custody evaluation, ordering the three parties to each pay one-third of the evaluation costs.  The court warned Mother that if she failed to comply with the order to pay Dr. Moran, his report would be based on information he had received to date, which did not include an interview with the children.  Mother did not pay her portion of the evaluation costs; thus, Dr. Moran's report did not include interviews with the children.  He did, however, review several documents Mother provided.

**¶18**        Although the superior court admitted Dr. Moran's report, it did not rely exclusively on the report in making its findings.  The findings relating to the children were also supported by other evidence in the record, specifically, reports of other mental health professionals who treated, interacted with, or interviewed the children, including Conciliation Services interviewers and three mental health professionals in Illinois, one in Arizona, and one in Nebraska.  The parties had also agreed to have Conciliation Services observe the children and parents as a cost-saving measure, and the court referred to these reports in its findings.  Additionally, the court considered the children's school and medical records.

**¶19**        The superior court did not cite Dr. Moran's report in discussing the statutory factors that applied to the children.  *See* A.R.S. § 25-403(A)(1), (2), (3), (8).  The court, however, referred to Dr. Moran's report—

---

[3]        In addition, Mother argues that Dr. Moran failed to follow professional standards and raises objections to his report based on Arizona Rule of Evidence 702.  Because Mother did not raise these issues in the superior court, they are deemed waived.  *Leathers v. Leathers*, 216 Ariz. 374, 378, ¶ 19 (App. 2007) (holding that issues not raised in the pretrial statement are waived).

and other evidence—when addressing the parents' mental health. *See* A.R.S. § 25-403(A)(5). Notably, Dr. Moran interviewed the parents.

**¶20** Custody evaluations without a personal interview of the children are not the norm. However, in this case, we find no prejudice or abuse of discretion because other evidence existed, *see supra* ¶ 17. When a court proceeding involves the custody of children, it is the duty of a superior court to hear all competent evidence which may be offered. *Hays v. Gama*, 205 Ariz. 99, 103, ¶ 21 (2003) (citation omitted). Excluding the report in its entirety would have deprived the court of other relevant information regarding the parties and their ability to parent the children.

**¶21** Mother also contends Dr. Moran's report contains findings contrary to other mental health providers. This court, however, does not reweigh evidence on appeal, and will defer to the weight that the superior court gives to conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). The superior court, having considered reports from several other mental health professionals, found that the absence of any interview with the children went to the weight the court would give Dr. Moran's report, not its admissibility. The court provided a lengthy and thoughtful explanation of the evidence supporting its conclusion that it was in the children's best interests to award sole legal decision-making authority to Hughes and Kafka and supervised parenting time to Mother. The record supports these conclusions. We find no abuse of discretion.

**¶22** Mother argues the report lacked foundation because Dr. Moran did not testify. However, she was not precluded from calling Dr. Moran. Mother was on notice that Dr. Moran's report would be admitted, but failed to make a timely foundation objection, and failed to call him as a witness.

III.    Child Support Order

**¶23** Mother argues that the superior court erred in calculating child support by precluding her from presenting any evidence relating to her income, financial resources, or the health of her youngest child, whom she claimed had medical needs that required her to stay at home and not work. Under Rule 65(B)(2)(b), if a party fails to obey an order to provide discovery, the court may enter "an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence[.]" *See also* Rule 76(D)(1). We review the imposition of discovery sanctions for an abuse of discretion. *Hays*, 205 Ariz. at 102, ¶ 17.

¶24        Mother did not comply with discovery requests relating to her financial resources and her youngest child's special medical needs despite repeatedly being ordered to do so. Because of Mother's failure to comply with orders to produce this information, the superior court did not allow Mother to offer related evidence at trial and attributed to Mother a monthly income of $5,546.67, based on Mother's 2010 earnings and an October 2012 job offer. Mother did not establish why her failure to comply with the discovery requests or orders was reasonable. Therefore, the sanctions were appropriate pursuant to Rules 65(B)(2)(b) and 76(D)(1).

¶25        Mother also contends the income attributed to her conflicts with an October 2012 order that found Mother and Hughes were indigent. The superior court found Mother's testimony was, overall, not "reliable, credible, or persuasive." More specifically, the court found Mother's claim that she was unable to work not credible based on sworn statements she made in juvenile court proceedings in 2013. "We will defer to the trial court's determination of witnesses' credibility[.]" *Gutierrez*, 193 Ariz. at 347, ¶ 13. According to her 2013 sworn statements, Mother was able to find work. The 2012 indigency finding, which predated these statements, is, therefore, not inconsistent. There was no other evidence to support Mother's claim that she was unable to work. Therefore, the court did not abuse its discretion in attributing income to Mother. *See* Arizona Child Support Guidelines, A.R.S. § 25-320 app. § 5(E).

IV.        Attorneys' Fees

¶26        Mother argues the superior court abused its discretion in awarding fees to Hughes and Kafka because she is indigent. An award of attorneys' fees is mandatory when the court makes the necessary findings under §§ 25-324(B), -415(A), and Rule 65(A)(4)(a). When reviewing a mandatory award of attorneys' fees, we apply a clearly erroneous standard to findings of fact, but a *de novo* standard when reviewing the application of a statute. *Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 370, ¶ 13 (App. 1998).

¶27        The superior court awarded attorneys' fees to Hughes and Kafka pursuant to A.R.S. § 25-324(B), finding Mother's petitions or motions were not filed in good faith, not grounded in fact or law, or filed for an improper purpose. The court also awarded fees pursuant to § 25-415(A), finding Mother falsely accused Hughes and Kafka of sexual assault. Finally, the court found fees were appropriate under Rule 65 as a sanction for Mother's repeated violations of discovery orders.

**¶28** The fee awards were not based on § 25-324(A), which considers the parties' relative financial resources. Income disparity is not relevant when considering whether a fee award is warranted under §§ 25-324(B), -415(A), and Rule 65. The record supports the award of fees on these grounds; therefore, we affirm the award of attorneys' fees to Hughes and Kafka.

## ATTORNEYS' FEES AND COSTS ON APPEAL

**¶29** The parties request attorneys' fees and costs on appeal pursuant to § 25-324(A). Hughes and Kafka also request fees on appeal pursuant to §§ 25-324(B), -414(C), and -415(A). Although Mother engaged in conduct prohibited under these statutes at trial, her brief on appeal does not mandate an award of fees in favor of Hughes and Kafka. Each party shall bear his or her attorneys' fees on appeal. As the successful parties on appeal, Hughes and Kafka are entitled to an award of reasonable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-342.

**¶30** We affirm the court's orders.



AMY M. WOOD • Clerk of the Court
FILED: AA