NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BETHANY LYN VALENTE, *Petitioner/Appellee*,

*v.*

RICHARD VALENTE, *Respondent/Appellant*.

No. 1 CA-CV 21-0332 FC
FILED 3-10-2022

Appeal from the Superior Court in Maricopa County
No. FC2018-001369
The Honorable Max Covil, Judge
Honorable Scott Blaney, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Ortega & Ortega PLLC, Phoenix
By Alane M. Ortega
*Counsel for Petitioner/Appellee*

David Dick and Associates, Chandler
By David A. Dick
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1        Richard Valente ("Father") appeals several rulings from the superior court's decree dissolving his marriage to Bethany Lyn Valente ("Mother"). For the following reasons, we vacate the child support arrearage judgment and remand for reconsideration of the past child support obligation. We affirm the remainder of the decree.

## BACKGROUND

¶2        In 2010, the parties married in Maine and had a child there seven years later. A few months after the child was born, Mother and the child went to stay with her parents in Arizona but did not intend to remain there permanently. However, in April 2018 Mother petitioned for divorce in Arizona, requesting sole legal decision-making authority, with supervised parenting time for Father. In response, Father sought to have the child live with him in Maine, with reasonable parenting time for Mother.

¶3        Throughout the marriage Father worked at a Maine floral shop, which was community property. In the divorce proceeding, the parties disputed the value of the business. Just before trial, Father moved to exclude Mother's business valuation expert or to continue the trial, asserting that Mother failed to timely disclose the expert's report. When the superior court indicated the trial would need to be continued, Mother decided to waive any interest in the floral shop, and the October 2020 trial proceeded as scheduled.

¶4        Meanwhile, at a June 2019 hearing to address competing motions to compel discovery related to the business, Father appeared in person and moved for expedited temporary parenting time orders. He alleged that Mother had denied in-person parenting time since September 2017. The court declined to enter emergency orders but granted Father four days of parenting time while he was in Arizona for the hearing. The following month, the court entered temporary orders awarding joint legal

decision-making authority, with Mother as the primary residential parent, and overnight parenting time for Father three days a month. Father had to exercise his parenting time in Arizona for the first two months, but could then exercise it elsewhere. The court did not enter temporary child support orders.

¶5            Father asked to modify the parenting time orders several times in the 15 months between this temporary order and the trial. Although the court denied Father's request to be the child's primary residential parent, it increased his parenting time to seven days a month starting in July 2020.

¶6            Following the trial, at which the parties and counsel participated remotely due to Covid-19, the court issued its decree awarding joint legal decision-making authority, with Mother having final say if the parties cannot agree. The court designated Mother as the primary residential parent and awarded Father at least three consecutive overnights each month during the school year and additional time during the summer, spring, and alternate holidays. Father was ordered to pay child support in the amount of $563 per month. The court entered an arrearage judgment for the $26,654 Father owed for past child support and awarded Mother $50,211.29 in attorneys' fees based on the substantial financial disparity favoring Father as well as his unreasonable conduct in the litigation. Father timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**I.      Due Process**

¶7            Father contends he was denied due process because the superior court reduced the trial from six hours to three hours after Mother withdrew her claim for any interest in the community business. He argues he was not able to present all his evidence on legal decision-making, parenting time, child support, and property division due to the shortened timeframe. We review due process claims de novo. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999). Due process requires that the court "afford the parties 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (citation omitted). "Due process errors require reversal only if a party is thereby prejudiced." *Id.* at 470, ¶ 26.

¶8            At trial, the parties spent the first portion (about 50 minutes) arguing motions related to the business valuation expert and whether the trial should be continued. After Mother waived her interest in the business

3

to avoid a continuance, the superior court allotted 90 minutes to each party to address the remaining issues. Father did not object or ask for more time. Nor did he make an offer of proof stating what evidence he would present if given additional time. Thus, he has waived the issue and failed to establish prejudice. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) (holding that "absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal"); *Gamboa v. Metzler*, 223 Ariz. 399, 402–03, ¶ 17 (App. 2010) (holding that to show prejudice warranting reversal, a party must make an offer of proof stating with reasonable specificity what the evidence would have shown).

**¶9** Father also argues he was denied due process because Mother's attorney asked mostly leading questions; however, Father's counsel did the same, and the court admonished both attorneys multiple times. Thus, Father has not shown he was prejudiced.

**¶10** According to Father, he was denied due process because during Mother's direct examination her counsel asked questions while not facing her microphone, making it difficult to hear Mother's answers. But Father does not assert he was prejudiced by the technological challenges that arose during the hearing. He therefore failed to establish any due process violation.

## II. Primary Residential Parent and Parenting Time Orders

**¶11** The superior court designated Mother as the primary residential parent and awarded Father at least three consecutive overnights each month from September through May; five of those nine visits must take place in Arizona. The court also awarded Father eight weeks of summer parenting time and extended parenting time every March and every other Christmas and Thanksgiving. Father contends that the evidence does not support these orders and that the court disregarded relevant statutes.

**¶12** We review the superior court's legal decision-making and parenting time orders for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). We accept the court's findings of fact absent clear error, *id.*, and view the evidence in the light most favorable to supporting the decree. *Cooper v. Cooper*, 167 Ariz. 482, 487 (App. 1990). A court must consider the child's best interests in deciding legal decision-making authority and parenting time based on factors relevant to those inquiries. *See* A.R.S. §§ 25-403(A), -403.01(B), and -403.03(C). Father challenges the court's findings and the weight it gave these factors. We do

not reweigh the evidence, and although conflicting evidence may exist, we will affirm if substantial evidence supports the court's decision. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶13**        Father argues the evidence showed he had a good relationship with the child, and the child enjoys spending time with him. *See* A.R.S. § 25-403(A)(1), (2).  Indeed, the superior court made this finding. It also found that Mother had a positive relationship with the child.  Thus, this factor was neutral, and we will not reweigh the evidence.

**¶14**        Father also contends the child should live with him, given Mother's past mental health issues.  *See* A.R.S. § 25-403(A)(5).  The mental health evaluator concluded that Mother had no current symptoms or a mental disorder.  Mother "has engaged in counseling to gain appropriate coping skills" and made "good progress" with her therapist in 2017 and 2018.   The evaluator noted that Mother's parenting skills were "appropriate, nurturing, and positive."  The evidence supports the court's finding that Mother's mental health is not a concern.

**¶15**        Father argues that Mother withheld parenting time from him after leaving Maine in 2017.  Father implies that this showed that he, not Mother, was more likely to allow contact with the other parent.  *See* A.R.S. § 25-403(A)(6).   He also contends that Mother's conduct constituted custodial interference, which meets the statutory definition of domestic violence.   *See* A.R.S. §§ 25-403.03(A); 13-3601; 13-1302(A)(2) (custodial interference occurs when a parent denies the other parent access to the child before entry of a court order, without a legal basis to do so).

**¶16**        Father did not spend time with the child in person between September 2017 and June 2019.  According to Father, Mother refused his requests for parenting time until the June 2019 temporary order.  Mother counters that Father did not ask for parenting time before then.  Before the June 2019 temporary parenting time order, Mother often communicated with Father about the child's health and activities, and Father had regular video calls with the child.  Most of Father's requests for parenting time before the temporary order demanded that Mother bring the child to Maine.  For her part, Mother offered parenting time in Arizona.  After the temporary order, she sometimes offered Father more time in Arizona than what the court had ordered.  To be sure, Mother's miscommunication caused Father to miss an October 2019 visit.  Although Mother's insistence that pre-temporary order parenting time occur in Arizona, that Father drive to Mother's hotel in Maine, or that the parties abide by the order for three-day long-distance visits may be viewed as unreasonable, she did not

entirely deny Father parenting time. Thus, the superior court could properly conclude her conduct did not constitute custodial interference.

**¶17** Although the superior court's findings do not refer to all the evidence Father cites on appeal, this does not mean the court ignored it. Rather, it shows that the court did not find certain evidence and testimony credible and weighed it accordingly. The evidence concerning the best interests factors was strongly disputed. Because we defer to the superior court's weighing of evidence and credibility determinations, we affirm the parenting time and primary residential parent orders.

## III.    Child Support Orders

**¶18** The superior court ordered Father to pay child support in the amount of $563 per month. The court also entered an arrearage judgment against Father in the amount of $26,654, plus interest. Father argues the court erred because it (1) used his 2020 income to determine the past support obligation and miscalculated the amount, (2) did not include the amount he pays for the child's health insurance, (3) did not attribute enough income to Mother, and (4) did not consider his travel costs when it ordered past child support. We review child support awards for an abuse of discretion and accept the court's findings of fact unless clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009).

### A.    Father's Income for Calculating the Past Support Obligation

**¶19** The arrearage judgment required Father to pay past child support from October 1, 2017 through October 20, 2020. The superior court did not, however, enter separate child support worksheets to support the arrearage judgment. Thus, we are unable to determine how much income the court attributed to Father in determining the past support obligation. The current child support order of $563 per month (based on Father's 2020 income of $62,136) for the 37-month period does not equal $26,654. And as discussed below, his income in 2017 and 2018 was substantially less than his 2020 income, and the record lacks any evidence regarding his 2019 income. Accordingly, the court may have used an even higher income than Father's 2020 income of $62,136, or, the arrearage judgment was miscalculated.[1]

---

[1]    The past support order covers 37 months, which when multiplied by $563, equals $20,831.

¶20 The evidence showed that Father earned $26,000 in 2017 and approximately $30,000 in 2018.[2] Mother did not contradict this evidence. On this record, the court erred when it used Father's higher 2020 income for the past child support order for 2017 and 2018. But because Father did not offer evidence of his 2019 income, the court did not abuse its discretion in attributing the 2020 income for that year. We reverse the arrearage judgment and remand for the court to enter separate child support orders based on worksheets reflecting Father's correct income for 2017 and 2018. The court shall correct the arrearage judgment for past support in 2019 through October 20, 2020 to reflect Father's monthly income of $5,178 ($62,136 annually).

### B.   Health Insurance Costs

¶21 Father asserts he has paid for the child's health insurance since 2017. In contrast, Mother testified that she arranged coverage for the child at no cost through the Arizona Health Care Cost Containment System ("AHCCCS"), and that because Father refused to remove the child from his insurance plan AHCCCS often denied coverage for bills that it would have otherwise covered. According to Father, he paid $1,325 per month to insure the family. Under the Child Support Guidelines, A.R.S. § 25-320 app. ("Guidelines") § 9(A) (2018)[3], the court had discretion to prorate that amount. Doing so would have resulted in a cost of $441.66 per person (Mother, Father, and child). But § 9(A) of the Guidelines also states that insurance costs need not be included if the plan does not offer coverage where the child lives.

¶22 The record does not establish whether Father's insurance plan covered the child in Arizona; instead, it shows only that Father's insurance prevented coverage once Mother signed up to insure the child through AHCCCS. But nothing in the record suggests when AHCCCS coverage began. In addressing recalculation of the past child support obligation, the court shall also determine whether to credit Father for health insurance if

---

[2]   Father's 2018 income was estimated by taking the 2018 YTD income ($18,500) and adding $13,200 ($4,400 monthly income times 3 remaining months (October-December)).

[3]   We apply the Guidelines in effect at the time of the decree. *See* Arizona Supreme Court Administrative Order No. 2021-56, dated April 22, 2021 (enacting new Guidelines effective January 1, 2022).

he shows that his plan covered the child in Arizona at a time the child was not covered by AHCCCS.

### C. Mother's Income

¶23 The superior court attributed full-time minimum wage income to Mother ($24,960 annually). Father argues on appeal that Mother could earn $40,000 annually. The evidence on that point was conflicting, and Father has shown no abuse of discretion. Father testified that Mother could earn at least $35,000 annually, although he did not support that testimony with any supporting evidence. In 2020, Mother was a full-time student and worked part-time as a massage therapist. Mother's financial affidavit showed she earned $29,353 in 2017, which is more than minimum wage. Her income decreased to $23,643 in 2018 and $12,354 in 2019.

¶24 Because Father failed to show that Mother is currently capable of earning more than minimum wage as a full-time student, we affirm the current child support order. But because we are remanding the past support orders for reconsideration, the superior court should consider the evidence of Mother's 2017 income ($29,353) when it calculates the past support order.

### D. Father's Travel Costs

¶25 Father argues the superior court should have considered his travel costs when calculating his past child support obligation. He testified that he spent about $25,000 to exercise his long-distance parenting time. We review the allocation of travel expenses for an abuse of discretion and will affirm if the superior court's ruling is within "the bounds of reason." *Cook v. Losnegard*, 228 Ariz. 202, 204, 205, ¶¶ 9, 11 (App. 2011) (quotations omitted).

¶26 A court "may allocate travel expenses *of the child* associated with parenting time in cases where one-way travel exceeds 100 miles." Guidelines § 18 (emphasis added). "In doing so, the court shall consider the means of the parents and may consider how their conduct (such as a change of residence) has affected the costs of parenting time." *Id.* It is unclear what portion, if any, of the amount Father sought was for the child's travel expenses as directed by the Guidelines. Moreover, Father traveled for parenting time until 2019. Given the lack of evidence as to Father's 2019 income, the court was within its discretion to attribute Father's 2020 income to determine the 2019 child support obligation. *See supra* ¶ 19. Based on those figures, Father had greater income than Mother, and the court did not abuse its discretion when it ordered Father to bear his past travel costs.

### E.    Property Allocation

**¶27**    The superior court ordered Father to repay one-half of $20,000 Mother loaned to the community business from her separate property 401(k) account. We review the court's property allocation for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007).

**¶28**    The only evidence about the 401(k) is Mother's testimony that it was her premarital separate property. According to Mother's pretrial statement, she loaned the community business $20,000 from her 401(k) and sought reimbursement. Father's pretrial statement asserted that Mother gifted this money to the community to pay community expenses. The superior court found the $20,000 was a "personal loan for business" and ordered Father to reimburse Mother half of this community debt. Although Father now argues Mother is not entitled to reimbursement because she waived her interest in the community business, he did not raise that argument in his pretrial statement. Because Father cannot raise a new argument for the first time on appeal, we will not address it. *See Bobrow v. Bobrow*, 241 Ariz. 592, 597, ¶ 23 (App. 2017).

### F.    Discovery Orders

**¶29**    Father challenges the superior court's business-related discovery orders on several grounds. However, the orders cited in Father's appellate briefs are not discovery orders related to the community business. In any event, Father has not shown how he was prejudiced by these rulings once Mother waived her interest in the business, other than the argument related to attorneys' fees, which we address below.

### G.    Attorneys' Fees

**¶30**    The superior court awarded Mother $50,211.29 in attorneys' fees and costs based on Father's greater financial resources and his unreasonable conduct in the litigation. Father challenges this award on several grounds. We review the award of attorneys' fees under A.R.S. § 25-324 for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014).

**¶31**    First, Father disputes the court's finding that he acted unreasonably by attempting to obstruct Mother's requests for information and by filing unnecessary requests for parenting time. Father argues he reasonably requested parenting time because Mother denied him access for almost two years and then failed to follow the temporary orders. But Father waited over a year to file his first request for parenting time. He then filed

the petition for holiday time shortly before the holidays, which the court denied. Less than two weeks before the trial date, Father petitioned to have the child live with him in Maine. While Father's petition to enforce the temporary orders might have been reasonable, the court could reasonably characterize the other two petitions as unnecessary. Presumably, the court's finding that Father unreasonably attempted to obstruct Mother's requests for information relates to his delay in responding to discovery requests. Although Father denied any delay, we defer to the court's determination of this factual dispute. *See Hurd*, 223 Ariz. at 52, ¶ 16.

¶32 Second, Father argues that Mother also engaged in unreasonable conduct. Indeed, the superior court found Mother acted unreasonably in taking the child to Arizona for an extended period. However, we defer to the weight the superior court placed on the parties' conduct. *Id.*

¶33 Finally, Father contends that Mother should not recover fees for issues on which she did not prevail. But § 25-324 does not establish a prevailing party standard for awarding attorneys' fees. *Breitbart-Napp v. Napp*, 216 Ariz. 74, 84, ¶ 39 (App. 2007). Mother's degree of success is not dispositive in determining the appropriate amount of the fee award. *See Bobrow*, 241 Ariz. at 599, ¶ 31 (§ 25-324 "allow[s] a spouse with limited resources to advance a legitimate though ultimately unsuccessful claim without being financially intimidated."). We affirm the award of attorneys' fees to Mother.

## CONCLUSION

¶34 We vacate the arrearage judgment and remand for reconsideration of the past child support obligation in a manner consistent with this decision. In all other respects, we affirm the decree. In our discretion, we deny Mother's request for attorneys' fees and costs incurred on appeal under A.R.S. §§ 12-349 and 25-324.

