NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MATTHEW WHITE, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

BH AUTOMOTIVE, *Respondent Employer,*

BH AUTOMOTIVE, *Respondent Carrier*.

No. 1 CA-IC 23-0030
FILED 07-25-2024

---

Special Action - Industrial Commission
ICA Claim No. 20220900030
Carrier Claim No. 007733-020702-WC-01
The Honorable Jeanne M. Steiner, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Matthew Daniel White, Buckeye
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Stephen C. Baker
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

---

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Kent E. Cattani and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1     Matthew White challenges the decision of the Industrial Commission of Arizona ("ICA") affirming the closure of his claim. We affirm.

**FACTS AND HISTORY**

¶2     On March 15, 2022, while working at a car dealership owned by BH Automotive ("BH"), a self-insured employer, White lifted an object weighing between 120 and 150 pounds and felt a "pop," followed by pain in his pelvis and abdomen. He believed that he may have suffered a hernia because the pain was reminiscent of "the pain that [he] experienced" after hernia repair surgery in 2017. White sought medical attention three days later. The treating physician approved his return to work that same day, subject to restrictions on his performance of certain physical tasks.

¶3     White filed an injury report in March 2022, and BH accepted his worker's compensation claim.

¶4     Over the following months, White saw several medical providers. Although White believed he had a hernia, none of his treating physicians made that diagnosis. Several doctors diagnosed an abdominal strain, while one provider suspected a lumbar injury. Meanwhile, White's pain continued.

¶5     In September 2022, Dr. Louis Glass, who is board-certified in general surgery, conducted an independent medical examination ("IME") to determine if White's pelvic injury was medically stationary. After reviewing the available medical records and conducting a physical examination, Dr. Glass found "no evidence" of "hernia recurrence." Dr. Glass observed that the March 2022 incident "may have" caused "an abdominal strain," but opined that "one would expect even a severe abdominal strain to have resolved at this point." Dr. Glass went on to identify White's reported back pain "as a potential source of his abdominal and groin pain," concluding that "if his groin and lower abdominal pain

are secondary to a lumbar injury which is . . . determined . . . to have occurred due to the March 15, 2022 incident, then the determination of [the] timeframe for resolution" of that injury "should be left to the expertise of" a specialist.

¶6            In October 2022, White filed a hearing request, complaining that BH would not approve "scans of [his] back."

¶7            In November 2022, Dr. Robert Waldrop, who is board-certified in orthopedic surgery and fellowship-trained in spinal surgery, conducted an IME to determine whether White had a work-related lumbar injury. Dr. Waldrop found no evidence in the records or upon physical examination that would support a "spine or orthopedic related diagnosis" or any "aggravation of a pre-existing condition." Instead, Dr. Waldrop opined, "abdominal strain . . . appears to be the most appropriate diagnosis." Dr. Waldrop also opined that he saw "no reason to plac[e] limitations on" White and that White was "at maximal medical improvement."

¶8            Based on the results of Dr. Waldrop's IME, BH closed White's claim on December 9, 2022.

¶9            White's case was set for hearing in January 2023. Shortly before the hearing, White filed a written statement asserting that he needed further active treatment for his work injury. The administrative law judge ("ALJ") treated White's written statement as a hearing request challenging the closure of his claim.

¶10            The hearing was conducted over four days from January 17, 2023, to June 13, 2023. White and three medical expert witnesses testified. White represented himself at the hearing.

¶11            At the beginning of the proceedings on January 17, 2023, the ALJ asked White if he is "asserting a claim for a hernia or for a back injury?" White replied, "Hernia." White claimed to have "new scans" that were taken earlier that month "showing that I do have a right inguinal hernia." He acknowledged having back pain as well but insisted that his back pain was "separate" from his "pelvic problem," explaining, "I've had back pain half my fricking life."

¶12            Over the course of the hearing, however, White's position about the nature of his injury changed. Shortly after he testified on January 17, White underwent an MRI that showed arthritis and degenerative changes in his lumbar spine. After that, he asserted that his March 2022

lifting incident caused a back injury, not a hernia. At the last day of the hearing on June 13, White stated, "I don't have a hernia. I've already kind of figured that out."

¶13        At the May 3 session of the hearing, Dr. Ralph Whallon, who is board-certified in family medicine, testified that he started treating White in late 2022 when White presented with pelvic pain. After reviewing the results of an MRI of White's lumbar spine, Dr. Whallon determined that White did not have a hernia and considered "lower back pain" as the cause of White's symptoms. Dr. Whallon eventually diagnosed White with lumbar radiculopathy requiring further treatment. When asked if the lumbar condition was related to the March 2022 incident, Dr. Whallon stated that, while "it's not clear to me," "[i]t would not be improbable" that lifting something heavy would "exacerbate pain . . . from the osteoarthritis that was previously there." He concluded that "lifting something heavy" was, more likely than not, "related to the patient having the pain that he's describing."

¶14        But Dr. Whallon also admitted that he did not gather White's prior records to determine whether his complaints were "caused by the industrial injury." "He came to me with groin pain," Dr. Whallon explained, "and my desire was to address that."

¶15        Dr. Glass and Dr. Waldrop each testified about the IMEs they conducted and the conclusions that they drew. Dr. Glass confirmed his opinion that White did not have a hernia. He also testified that, if White had suffered an abdominal strain, it would have "[t]ypically . . . resolve[d] completely with rest within 90 days." Dr. Glass opined that White was stationary with no permanent impairment in relation to the March 2022 injury.

¶16        Dr. Waldrop testified that he found no "objective physical" evidence to support Dr. Whallon's radiculopathy diagnosis. Instead, Dr. Waldrop testified, he found "evidence of degenerative disc disease." He stated that his examination of White did not uncover any "acute structural [spinal] injury" that would require "active care" or had caused permanent impairment. Instead, he opined that White was stationary without permanent impairment in relation to the March 2022 injury.

¶17        Although ICA rules generally require documentation intended as hearing evidence to be filed at least 25 days (for medical reports) or 15 days (for non-medical reports) before the first hearing date, White continued to file medical records and other documents with the ICA

throughout the course of the months-long proceedings. The ALJ exercised her discretion to accept and consider the records and documents White belatedly submitted. *See* A.A.C. R20-5-155 (permitting exceptions for good cause). Dr. Glass and Dr. Waldrop submitted addenda to their IME reports after reviewing approximately 80 additional pages of medical records that White submitted; neither of them changed his opinion. BH chose not to respond to any other evidence belatedly submitted by White.

¶18 Finally, on August 14, 2023, the ALJ issued a ruling stating that "the case is deemed submitted." Even though the evidentiary record closed on August 14, 2023, White continued to file personal statements and medical records with the ICA over the next several months.

¶19 After considering the testimony and reviewing the evidence, the ALJ issued a decision on September 11, 2023, rejecting Dr. Whallon's opinion that White's "current pain is more than likely related to the [March 2022] work injury" and accepting, as "more probably correct and well founded," the contrary conclusions of Dr. Glass and Dr. Waldrop. In so ruling, the ALJ noted that, unlike Dr. Glass and Dr. Waldrop, Dr. Whallon "had not seen all of [White's] medical records." The ALJ's award affirmed the closure of White's claim as of November 10, 2022.

¶20 Two days after the award was issued, White submitted a letter complaining of "discrepancies" between his "actual physical condition" and the "findings" of the "work comp doctors." Questioning "the thoroughness and accuracy of their assessments," White referenced ongoing medical treatment he was receiving and asked the ALJ's "guidance" in helping him "ensur[e] that the court has access to accurate and comprehensive information about [his] condition."

¶21 The ALJ treated White's letter as a request for administrative review. On October 30, 2023, the ALJ issued a decision upon review. Citing Arizona statute and administrative rules, the ALJ stated that "new evidence" would "not be considered" because "it is not appropriate for new evidence to be presented on review." The ALJ made additional factual findings based on the existing record, including that (1) "a lumbar MRI" taken in February 2023 "showed osteoarthritis and degenerative changes that could explain [White's] pain," (2) White acknowledged that he has "had back pain most of his life," and (3) Dr. Whallon "equivocated" when asked if White's condition "was related to the lifting incident on March 15, 2022." The ALJ concluded by affirming her decision of September 11, 2023.

¶22        White brought this statutory special action appeal. We have jurisdiction. *See* A.R.S. §§ 12-120.21(A)(2), 23-948.

## DISCUSSION

¶23        White argues that the ALJ did not properly weigh the testimony and evidence. He also argues that the ALJ denied him due process by refusing to consider evidence submitted after August 14, 2023, and by failing to make adequate findings of fact. We reject White's contentions.

¶24        A worker's compensation claimant has the burden of proving the compensability of the claim. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). In reviewing an ICA's determination of a claim, this Court defers to the factual findings of the ALJ but reviews questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). Further, we view the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). We will affirm an ICA award as long as it is supported by "any reasonable evidence." *Scowden v. Indus. Comm'n*, 115 Ariz. 81, 82 (App. 1977).

¶25        When there are conflicts in the medical evidence or when two different inferences may be drawn from such evidence, the ALJ has the discretion to resolve the conflicts. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988). Factors that an ALJ should consider in resolving conflicting evidence include "whether or not the testimony is speculative," the "qualifications" of "the expert witnesses," and the experts' "experience in diagnosing the type of injury incurred." *Id*. A reviewing court will not reweigh the evidence, *see Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 608, ¶ 21 (App. 2000), and will not disturb the ALJ's resolution of conflicts in the medical evidence unless the ALJ's resolution "is wholly unreasonable," *Rosarita Mexican Foods v. Indus. Comm'n*, 199 Ariz. 532, 535, ¶ 10 (2001) (cleaned up). A reviewing court will, in other words, defer to an ALJ's resolution of disputed evidence "even if this Court as the trier of fact would have reached a different conclusion on the evidence." *Kilkenny v. Indus. Comm'n*, 15 Ariz. App. 571, 573 (App. 1971).

¶26        White requests that this court "reevaluate" the medical evidence, characterizing Dr. Waldrop and Dr. Glass as "biased." Dr. Waldrop, he alleges, runs "a 1 star rated business with horrifying reviews," and his IME, which lasted "a mere 11 minutes," resulted in a "questionable assessment[]." By contrast, White argues, Dr. Whallon's "diagnosis of [r]adiculopathy" was supported by "a comprehensive array of MRI scans"

which were "seemingly overlooked or downplayed." According to White, the ALJ's "reliance on biased IME evaluations without considering the extensive objective medical evidence . . . constitutes a fundamental error."

¶27         White's challenge to the reliability of the evidence relied upon by the ALJ amounts to a request that this court re-weigh the evidence, which we will not do. *Kaibab Indus.*, 196 Ariz. at 608, ¶ 21. The record supports the ALJ's determination that Dr. Waldrop and Dr. Glass reviewed more of White's medical records than Dr. Whallon did, and that Dr. Whallon equivocated when asked whether White's symptoms were related to the March 2022 lifting incident. Further, unlike Dr. Whallon, Dr. Waldrop is fellowship-trained in spinal surgery. Dr. Whallon himself acknowledged that a fellowship-trained spinal surgeon would have "appropriate expertise" to determine whether White's pathology was related to the March 2022 incident. The ALJ cannot be said to have abused her discretion in concluding that the opinions of Dr. Waldrop and Dr. Glass were more persuasive than Dr. Whallon's. Reasonable evidence supports the ALJ's resolution of the conflicts in the evidence, which we must, therefore, affirm. *Scowden*, 115 Ariz. at 82; *see also Phelps v. Indus. Comm'n*, 155 Ariz. 501, 506 (1987) (ICA award will be disturbed only if it cannot be "supported on any reasonable theory of evidence").

¶28         White complains that the ALJ "seemed to overlook" the "substantial medical evidence" that he "obtained on and after August 14, 2023." "[T]he decision to disregard evidence submitted after August 14, 2023," he contends, "is arbitrary and unjust."

¶29         ICA rules require parties to file medical reports "not already contained in the [ICA's] claims file . . . at least 25 days before the first scheduled hearing." *See* A.A.C. R20-5-155. Because the hearing began on January 17, 2023, ICA rules required White to file his hearing exhibits by December 23, 2022. When White filed exhibits after that deadline, the ALJ exercised her discretion under A.R.S. § 23-941(F) to consider them despite their untimeliness. Indeed, the ALJ allowed White to submit new evidence for almost *eight additional months* after the deadline established by ICA rule. But while the ALJ relaxed the ICA rules to give White more time to submit evidence, the ALJ could not properly extend the deadline indefinitely, or else the case would never be resolved. Further, allowing White to submit untimely evidence over a period of months imposed an additional burden on the opposing party, BH. Allowing one party to repeatedly submit new evidence on an ongoing and potentially endless basis would be neither fair to BH nor consistent with the ALJ's obligation to "conduct the hearing" in a manner that "achieve[s] substantial justice." A.R.S. § 23-941(F). We find

no unfairness or prejudice to White in the ALJ's decision to stop accepting new evidence on August 14, 2023, more than two months after the hearing concluded on June 13, 2023.

**¶30**        In his opening brief, White discusses medical appointments he has had since the ICA issued its award and asks this court to "[c]onsider and evaluate evidence [he] submitted after August 14, 2023." Because an appellate court's review of an ICA award is limited to the record before the ICA, *see Breeding v. Indus. Comm'n*, 14 Ariz. App. 513, 514 (App. 1971), we will not consider any medical records or other material submitted after August 14, 2023.[1] Instead, we confine our review to the evidentiary record and determine whether it contains evidence that supports the award. *See id.*

**¶31**        White urges this court to "examine the procedural fairness" of the hearing process. We have done so, and find no error that could entitle him to relief. On the contrary, the ALJ imposed no time limits on White's testimony, and allowed him to cross-examine the other witnesses who testified.  At no point did White ever complain to the ALJ that he was not given adequate time to testify or to cross-examine witnesses. *Cf. Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 16 (App. 2010) (rejecting plaintiff's procedural due process challenge to time limits imposed at trial in part because plaintiff "did not request additional time"). By allowing White ample opportunity to elicit testimony and present evidence, the ALJ satisfied "the fundamental requirement of due process" by giving him "the opportunity to be heard at a meaningful time and in a meaningful manner." *Samiuddin v. Nothwehr*, 243 Ariz. 204, 211, ¶ 20 (2017) (cleaned up).

**¶32**        Finally, White argues that the ALJ did not provide a "sufficient explanation" for her ruling to allow for "a meaningful appeal process."

**¶33**        The Arizona Supreme Court has held that an ALJ must resolve "all the case's material issues" and that an appellate court will vacate an award "if [it] cannot determine the factual basis of [the ALJ's] conclusion or whether it was legally sound." *Post v. Indus. Comm'n*, 160 Ariz. 4, 7 (1989). Here, the ALJ resolved all material issues, and her rulings of September 11, 2023, and October 30, 2023, are sufficiently specific to

---

[1] During the pendency of this appeal, White has continued to file medical records not part of the record before the ICA hearing, and asked leave to file other records. This court struck the supplemental records submitted by White and denied leave to supplement the administrative record.

enable meaningful appellate review. We therefore reject White's challenge to the purported inadequacy of the ALJ's explanation for her decision in this case.

**CONCLUSION**

¶34   We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AGFV